# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 2 8 2014

_____
CHIEF JUSTICE

This opinion was filed for record
at ____ 8:00 AM on Aug 28, 2014

_____
Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON IN | No. 88414-5 |
| KELLI GRAY and all others similarly situated, | En Banc |
| Plaintiffs, | |
| v. | Filed AUG 2 8 2014 |
| SUTTELL & ASSOCIATES; MIDLAND FUNDING, LLC; MARK T. CASE and JANE DOE CASE, husband and wife; and KAREN HAMMER and JOHN DOE HAMMER, | |
| Defendants. | |
| EVA LAUBER; DANE SCOTT; SCOTT BOOLEN; JOEL FINCH; and all others similarly situated, | |
| Petitioners, | |
| v. | |
| ENCORE CAPITAL GROUP, INC.; MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; SUTTELL & HAMMER, PS; MARK T. CASE and JANE DOE CASE, husband and wife; MALISA L. GURULE and | |

No. 88414-5

JOHN DOE GURULE; KAREN HAMMER and )
ISAAC HAMMER, wife and husband; WILLIAM )
SUTTELL and JANE DOE SUTTELL, husband )
and wife, )
  )
  )
Respondents. )
  )

WIGGINS, J.—In response to questions certified to this court, we hold that debt buyers fall within the definition of "collection agency" under the Washington Collection Agency Act (WCAA), chapter 19.16 RCW, when they solicit claims for collection. Accordingly, if the court finds that Midland Funding LLC solicited claims, then Midland Funding is a collection agency and it cannot file collection lawsuits without a license.

ISSUES

The United States District Court for the Eastern District of Washington certified the following questions to us:

1. Does the definition of "collection agency" in RCW 19.16.100(2)[1] include a person who 1) purchases claims that are owed or due or asserted to be owed or due another, 2) undertakes no activity on said delinquent consumer account but rather contracts with an affiliated collection agency to collect the purchased claims, and 3) is the

---

[1] The definitions in this section were recently alphabetized pursuant to RCW 1.08.015(2)(k). LAWS OF 2013, ch. 148, §§ 1, 3. Accordingly, the definition of "collection agency" is now under RCW 19.16.100(4). However, this opinion cites to prealphabetized RCW 19.16.100 to ensure consistency with the briefs.

2

named plaintiff in a subsequent collection lawsuit for said purchased claims?

2. Can a company, such as Midland Funding, LLC, file lawsuits in the [state of] Washington on delinquent consumer accounts without being licensed as a collection agency as defined by RCW 19.16.100(2)?

Certification from United States District Court for the Eastern District of Washington, No. CV-09-251-EFS consolidated with No. CV-10-5132-EFS (E.D. Wash. 2013).

## FACTS

This lawsuit involves two consolidated suits: *Gray v. Suttell & Assocs.*, No. CV-09-251-EFS (E.D. Wash.), and *Lauber v. Encore Capital Grp.*, No. CV-10-5132-EFS (E.D. Wash.).[2] On April 8, 2011, plaintiffs filed an amended complaint, alleging claims under Washington's Consumer Protection Act (WCPA), chapter 19.86 RCW, and the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p. These claims are based in part on plaintiffs' assertion that Midland Funding's business

---

[2] In the *Gray* lawsuit, Kelli Gray failed to pay for an item she ordered from Spiegel Brands Inc. Electronic Case File (ECF) 428, at 1. Midland Funding purchased Gray's defaulted Spiegel account and assigned the account to its servicer, Midland Credit Management Inc. (MCM), which then turned the account over to Suttell & Associates, a law firm that filed a collection lawsuit against Gray in Spokane County Superior Court. *Id.* at 1-2. On August 12, 2009, Gray filed her lawsuit, alleging that the Midland defendants and Suttell violated the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p; Washington's Consumer Protection Act (WCPA), chapter 19.86 RCW; and the WCAA by serving and filing time-barred lawsuits, requesting unreasonable attorney fees, and acting as a collection agency without a license. ECF at 1-2. On November 10, 2010, plaintiffs Eva Lauber, Dane Scott, Scott Boolen, and Joel Finch filed their putative class action on debt obligations that they failed to pay. *Id.* The *Lauber* plaintiffs' complaint similarly alleges violations of the FDCPA, WCPA, and WCAA based on the filing of affidavits in state court actions, and a license claim. *Id.* On December 29, 2010, the court consolidated the *Lauber* and *Gray* cases. *Id.*

3

arrangements and debt collection processes violated the WCAA. *See* RCW 19.16.440; *Evergreen Collectors v. Holt,* 60 Wn. App. 151, 155, 803 P.2d 10 (1991) (violation of WCAA is a per se violation of the CPA). The following chart illustrates the relationships between Midland Funding and its parent companies.

Encore Capital Group Inc. (publicly held corporation)

↓ Owns

Midland Credit Management Inc. (licensed collection agency)

↓ Owns

Midland Portfolio Services Inc. (owns 100% of Midland Funding)

↓ Owns

Midland Funding LLC (debt buying entity that owns the accounts)[3]

Midland Funding purchases defaulted receivables, i.e., consumers' unpaid financial commitments to credit originators such as banks, credit unions, consumer finance companies, commercial retailers, auto finance companies, and telecommunication companies. Midland Funding has no employees and is merely a holding company for the delinquent accounts it purchases.

Midland Credit Management (MCM) services the defaulted accounts on behalf of Midland Funding. Pursuant to the "Servicing Agreement," MCM decides how to collect on the defaulted accounts purchased by Midland Funding. MCM's employees manage the collection process and perform the collection acts for these defaulted accounts. MCM is licensed by the State of Washington as a collection agency. To fulfill its servicing duties, MCM contracts directly with Suttell & Associates, a law firm,

---

[3] Note that MCM, the collection agency, owns the "owner" of the accounts it is collecting.

to file collection lawsuits in Midland Funding's name. From 2005 to 2010, 1,082 cases were filed in Washington superior courts naming Midland Funding LLC as plaintiff.

Defendants Midland Funding and Suttell argue that prior to recent amendments to the WCAA, debt buyers did not fall within the definition of "collection agencies." Thus, Midland Funding did not need not to obtain a collection agency license. In February 2013, the federal district court certified the above questions to this court.

I.    Overview of Washington's Collection Agency Act

Both state and federal law regulate collection agencies. The WCAA, chapter 19.16 RCW, enacted in 1971, requires collection agencies to obtain a license, follow certain internal procedures, and adhere to a code of conduct. Prior to recent amendments, the WCAA defined "collection agency" as:

> (a) Any person **directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person**;
>
> (b) Any person who directly or indirectly furnishes or attempts to furnish, sells, or offers to sell forms represented to be a collection system or scheme intended or calculated to be used to collect claims even though the forms direct the debtor to make payment to the creditor and even though the forms may be or are actually used by the creditor himself or herself in his or her own name;
>
> (c) Any person who in attempting to collect or in collecting his or her own claim uses a fictitious name or any name other than his or her own which would indicate to the debtor that a third person is collecting or attempting to collect such claim.

Former RCW 19.16.100(2) (2003) (emphasis added).[4]

---

[4] The drafters of the original 1971 bill included "factoring" agencies under the definition of collection agencies. That language did not survive the Senate Judiciary Committee's review. *See* Substitute S.B. 796, at 2, 42d Leg., 1st Ex. Sess. (Wash. Apr. 21, 1971) (on file with

A recent amendment, effective October 1, 2013, adds subsection (d) to this definition:

> (d) Any person or entity that is **engaged in the business of purchasing delinquent or charged off claims for collection purposes**, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims.

LAWS OF 2013, ch. 148, § 1 (emphasis added) (codified at RCW 19.16.100(2)(d)).

The federal FDCPA was enacted in 1977 to combat abusive debt collection practices. 15 U.S.C. § 1692. Some provisions of the WCAA parallel provisions of the FDCPA, but there are notable differences. For instance, the FDCPA regulates "'debt collector[s]'" as opposed to "collection agencies." 15 U.S.C. § 1692a(6). Because the FDCPA's definition of "debt collectors" differs from the WCAA's definition of "collection agency," we do not find courts' interpretations of the FDCPA definition instructive in this case.

II.  Overview of Debt Purchasing

Since the enactment of the WCAA, the debt collection industry has grown and changed to keep up with the increasing amount of consumer delinquent debt.[5] The

---

Wash. State Archives). Factoring consists of lending money to commercial clients, taking accounts receivable as security, and collecting upon those accounts. While factoring is a form of alternative financing to improve working capital, working with a collection agency is an attempt to recover old debt.

[5] As of November 2013, American consumers held over $800 billion of revolving, unsecured debt. *Consumer Credit – G.19: Current Release: June 2014*, BOARD OF GOVERNORS OF FED. RES. SYS., http://www.federalreserve.gov/releases/g19/Current/#table1 (release date Aug. 7, 2014). According to a 2009 government accountability office report, "[a]pproximately 6.6 percent of credit cards were 30 or more days past due in the first quarter of 2009—the highest [delinquency] rate in 18 years." U.S. Gov't Accountability Office, *Credit Cards: Fair Debt*

Federal Trade Commission noted that "'[t]he most significant change in the debt collection business in recent years has been the advent and growth of debt buying.'" FED. TRADE COMM'N, THE STRUCTURE AND PRACTICES OF THE DEBT BUYING INDUSTRY 1 (2013) (alteration in original) (quoting FED. TRADE COMM'N, COLLECTING CONSUMER DEBTS: THE CHALLENGE OF CHANGE 13 n.1 (2009)). Although a relatively new industry, by 2007, the debt collection industry employed over 200,000 people and reported annual revenue of $58 billion from consumer collections. RICK JURGENS & ROBERT J. HOBBS, NAT'L CONSUMER LAW CTR., THE DEBT MACHINE, HOW THE COLLECTION INDUSTRY HOUNDS CONSUMERS AND OVERWHELMS COURTS 5 (2010). A "debt buyer" is an entity or individual that purchases delinquent or charged-off debts from a creditor, usually for a fraction of the face value of the debt, and then takes some action to collect on those claims. H.B. REP. on SUBSTITUTE H.B. 1822, at 2, 63d Leg., Reg. Sess. (Wash. 2013).

There is growing concern that collection practices employed by debt buyers are harmful to consumers. A legislative staff summary of public testimony in support of the recent amendments reported:

> Many of the worst abuses in the debt collection industry are by debt buyers. Debt buyers purchase mass portfolios of charged off debt for pennies on the dollar, with little evidentiary basis, and get massive default judgments because the consumers have no notice of the lawsuit. Consumers have had to go to great lengths to rectify judgments based on fraudulent or paid-off claims that were sold to debt buyers who did not know they were buying illegitimate claims.

*Id.* at 3.

---

*Collection Practices Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology* 1 (2009), www.gao.gov/new.items/d09748.pdf.

Indeed, up to one-half of all purchased debt is resold several times over, which can make it difficult for the original debtor to recognize the debt because the collector is no longer the original creditor. FED. TRADE COMM'N, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION 5 (2010). Responding to these concerns, the Washington State Legislature amended the WCAA in 2013 to explicitly reach debt buying entities. The issue here is whether the preamended definitions also cover debt buyers.

## ANALYSIS

Certified questions from federal court are questions of law that we review de novo. *Bradburn v. N. Cent. Reg'l Library Dist.,* 168 Wn.2d 789, 799, 231 P.3d 166 (2010). We consider the legal issues not in the abstract but based on the certified record provided by the federal court. *Id.* (citing RCW 2.60.030(2)). Once the court has decided to rule on a certified question pursuant to RCW 2.60.020, the ruling is not advisory but resolves actual issues pending in the federal proceeding and will be legal precedent in all future controversies involving the same legal question. *In re Elliott,* 74 Wn.2d 600, 446 P.2d 347 (1968).

Here, we hold that debt buyers are collection agencies under the WCAA when they solicit claims for collection. Accordingly, if Midland Funding solicits claims for collection, it is a collection agency and may not file collection lawsuits in Washington without a license. RCW 19.16.110 (no person shall act as a collection agency without first having applied for and obtained a license).

I.  Whether a Debt Purchaser Is a "Collection Agency" Subject to Licensing Requirements under the WCAA

The first issue is whether debt buyers are "collection agencies" subject to licensure under the WCAA. The relevant statutory provision defines a "collection agency" as

> [a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person.

RCW 19.16.100(2)(a).[6] We hold this definition is ambiguous, but the most reasonable interpretation is that debt buyers fall within it when they solicit claims for collection.[7] Recent amendments additionally clarify that this interpretation is correct.

A.  *The statute is ambiguous*

The purpose of statutory interpretation is "to determine and give effect to the intent of the legislature." *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012);

---

[6] The statute also lists entities that are not collection agencies. RCW 19.16.100(3). However, no provision specifically addresses debt buyers. Ch. 19.16 RCW.

[7] "Solicit" clearly requires some affirmative conduct, but the statute's ambiguity arises because parties disputed whether the statute applied to debt buyers who were soliciting/collecting claims they owned, as opposed to third party claims. Indeed, the Collection Agency Board (Board)—the agency charged with administering the WCAA—struggled to determine whether debt buyers fall under the statutory definition due to this ambiguity. *See* RCW 19.16.410. In a July 2004 meeting, the Board adopted an interpretation that debt buyers that collect solely on their own claims *and* in their own names are not covered by chapter 19.16 RCW. But in a more recent October 2011 board meeting, the Board acknowledged its 2004 decision and asked an assistant attorney general to reexamine whether debt buyers fall under the definition of a "collection agency" in RCW 19.16.100(2). The assistant attorney general offered no answer but suggested that debt buyers should fall under the department's regulatory oversight responsibilities. Finally, during a September 2012 meeting, the Board unanimously passed a resolution that the Board should "continue to review the issues" and "that the Board's current and past minutes are not intended for use as persuasive authority on those issues." Thus, the enforcing agency struggled to determine whether debt buyers fell within the scope of the definition, ultimately deciding that further research was necessary. This supports the conclusion that the statutory language is ambiguous.

*State v. J.P.,* 149 Wn.2d 444, 450, 69 P.3d 318 (2003); *In re Pers. Restraint of Williams,* 121 Wn.2d 655, 663, 853 P.2d 444 (1993). When possible, the court derives legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole. *State v. Ervin,* 169 Wn.2d 815, 820, 239 P.3d 354 (2010); *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We employ traditional rules of grammar to discern plain meaning. *State v. Jim,* 173 Wn.2d 672, 689, 273 P.3d 434 (2012) (citing *State v. Bunker,* 169 Wn.2d 571, 578, 238 P.3d 487 (2010)). If the statute remains susceptible to more than one reasonable meaning, it is ambiguous. *City of Seattle v. Fuller,* 177 Wn.2d 263, 269-70, 300 P.3d 340 (2013).

Here, the use of a comma and the disjunctive "or" to separate "soliciting claims for collection" and "collecting or attempting to collect claims owed or due or asserted to be owed or due another person" strongly suggests that there are two types of collection agencies. *See HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.,* 148 Wn.2d 451, 473 n.94, 61 P.3d 1141 (2003); *accord Riofta v. State,* 134 Wn. App. 669, 682, 142 P.3d 193 (2006) ("or" is disjunctive unless there is clear legislative intent to the contrary). In addition, the absence of a comma before the qualifying phrase "owed or due or asserted to be owed or due another person" indicates that the phrase refers only to the second type of collection agency. *Bunker,* 169 Wn.2d at 578 (under the last antecedent rule, a qualifying phrase refers to the last antecedent, but a comma before the qualifying phrase indicates that the phrase applies to all antecedents).

"Solicit" appears once more in another part of the statute listing prohibited activities applicable to licensees; under RCW 19.16.250, licensees may not attempt to *enforce* a claim by advertising or threatening to advertise sale of that claim and may not *solicit* a claim by agreeing to advertise or threaten to advertise sale of that claim. Thus, in both provisions, the two regulated actions are (1) enforcement/collection of a claim and (2) solicitation of a claim.

Accordingly, a reasonable reading of the statute is that it defines two types of "collection agencies": those that solicit claims for collection and those that collect claims owed to another. Collection agencies that fall within the first category of entities—entities that solicit claims for collection—need not collect claims owed to another. Accordingly, we reject defendants' argument that debt buyers cannot be collection agencies simply because they collect claims they purchase and own, and we hold that debt buyers qualify as collection agencies under the WCAA as long as they solicit claims for collection.

The statute does not define "solicit." *See* RCW 19.16.100. Webster's dictionary defines "solicit" as "to endeavor to obtain by asking or pleading." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2169 (2002). In other words, soliciting claims for collection involves conduct aimed at procuring a claim for collection. A passive market participant does not "solicit" claims for collection. There must be some affirmative act on the part of the solicitor. For example, the solicitor could advertise that it is purchasing claims, target individual sellers, enter into contracts with sellers to purchase claims, or perform market-based research to generate lists used to purchase claims. *See, e.g.*, RCW 19.182.010(7) ("direct

solicitation" means "the process in which the consumer reporting agency compiles or edits for a client a list of consumers who meet specific criteria and provides this list to the client or third party on behalf of the client for use in soliciting those consumers for an offer of a product or service"). By contrast, if a company is formed, sits idle, and never actually solicits or acquires any claims for collection, that company has not solicited claims for collection. Nor has a company solicited claims if it engages in no marketing and merely passively accepts offers.

Here, it is possible that Midland Funding solicited claims for collection if it affirmatively acted to acquire the claims it collected on.[8] But there are disputes whether Midland Funding is, in fact, a passive debt buyer as opposed to one that solicits claims for collection. It is not our task to make factual findings, only to explain

---

[8] Midland Funding was formed to purchase claims for collection, has actually purchased claims, and has subsequently filed 7,278 collection lawsuits in Washington between 2005 and 2010. It strains credulity to suggest that Midland Funding acquired 7,278 claims for collection without ever undertaking any steps to solicit claims. In addition, defendant Encore Capital files reports with the United States Securities and Exchange Commission (SEC). Defendants Midland Funding and MCM's financial and operational information are not separately required but, rather, are subsumed in the disclosures made by Encore Capital to the SEC. Indeed, in its 2010 10-Q filing with the SEC, Encore Capital explains:

> Encore Capital Group, Inc. ("Encore"), through its subsidiaries (collectively, the "Company"), is a systems-driven purchaser and manager of charged-off consumer receivable portfolios . . . . The Company purchases receivables based on account-level valuation methods, and employs a suite of proprietary statistical models across the full extent of its operations. . . . Moreover, the Company has one of the industry's largest distressed consumer databases, comprised of approximately 20 million consumer accounts.

ECF 128-1, at 5 (Encore Capital Grp. Inc. Quarterly Report (Form 10-Q), at 3 (Aug. 2, 2010)).

Although the SEC filing does not conclusively establish that Midland Funding solicits claims for collection, it has no employees and acts only through employees of other Encore Capital subsidiaries.

Washington law. Thus, we hold that Midland Funding, a debt buyer, is a "collection agency" under RCW 19.16.100(2) if the district court finds that Midland Funding solicited claims for collection—that is, if Midland Funding or its agents took any affirmative steps to obtain claims for collection.

Regarding the remainder of the definition, there is no dispute that debt buyers like Midland Funding are purchasing "claims" because Midland Funding purchases portfolios of consumer debt, particularly credit card obligations, arising from agreement or contract. *See* former RCW 19.16.100(5) ("claim" is "any obligation for the payment of money or thing of value arising out of any agreement or contract, express or implied"). In addition, Midland Funding solicits claims "for collection" even if it outsources the collection as long as its purpose for soliciting the claim is collection. None of the statutory exemptions applies to persons who outsource collection. *See* former RCW 19.16.100(3)(a)-(f). In sum, debt buyers like Midland Funding fall within the statutory definition of "collection agency" if they solicit claims for collection. This interpretation gives effect to the overall purpose of the WCAA—to prohibit unfair or deceptive debt collection practices.

### B. The 2013 amendments to RCW 19.16.100 clarify that debt buyers are "collection agencies"

Although we generally presume that a new legislative enactment is an amendment that changes a law, the presumption may be rebutted by clear evidence that the legislature intended an interpretive clarification. *State v. Elmore,* 154 Wn. App. 885, 905, 228 P.3d 760 (2010) (citing *Johnson v. Morris,* 87 Wn.2d 922, 926, 557 P.2d 1299 (1976)); *see also Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC,* 171 Wn.2d

736, 751, 257 P.3d 586 (2011). The new amendment provides that a collection agency includes:

> (d) Any person or entity that is engaged in the business of purchasing delinquent or charged off claims for collection purposes, whether it collects the claims itself or hires a third party for collection or an attorney for litigation in order to collect such claims.

LAWS OF 2013, ch. 148, § 1 (codified at RCW 19.16.100(2)(d)). There are two indications that this amendment is a clarification and not a change in the law.

First, as discussed, former RCW 19.16.100(2)(a) was ambiguous with respect to whether debt buyers who collect on claims they purchase and own are "collection agencies." *See Elmore,* 154 Wn. App. at 905 (one indication a new enactment is a clarification is that the original statute was ambiguous). There has been no judicial guidance on the issue; no court has addressed whether debt buyers were included in the statutory definition. Indeed, the reason the legislature amended the statute was to make clear that debt buyers are covered. *See* FINAL B. REP. ON SUBSTITUTE H.B. 1822 at 1, 63d Leg., Reg. Sess., at 1 (Wash. 2013); H.B. REP. ON SUBSTITUTE H.B. 1822, at 2-3 (writing that debt buyers were not "specifically" or "technically" covered by the WCAA, suggesting they were implicitly covered). The amended definition does not conflict with the former statute. The legislature has merely clarified a definition that, in application, connoted an ambiguous meaning.

Second, the legislature amended RCW 19.16.100 following uncertainty as to whether the original enactment encompassed debt buyers. When an amendment is adopted soon after a disagreement regarding the meaning of the law, courts have concluded that the amendment is clarifying. *See, e.g., Barstad v. Stewart Title Guar.*

14

*Co.*, 145 Wn.2d 528, 536-37, 39 P.3d 984 (2002) (legislature amended definition after we declined to interpret definition in four consecutive decisions, holding that amended statute resolved ambiguity); *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 324, 12 P.3d 144 (2000) (amendments clarified legislature's view of statute that a recent superior court decision had called into question). Here, for eight years the Board struggled to determine whether debt buyers fell within former RCW 19.16.100(2)(a), ultimately deciding at a meeting in September 2012 that the issue required yet further examination. Just a few months later, H.B. 1822 was introduced in the House of Representatives. H.B. 1822, 63d Leg., Reg. Sess. (Wash. 2013) (first reading on Feb. 11, 2013). Thus, the amendment's aim was to clarify uncertainties that arose from the enforcement of the WCAA.

To conclude, we hold that the preamended definition of "collection agency" includes debt buyers who solicit claims for collection. Midland Funding meets this requirement if it sought to purchase delinquent debts for collection. The recent amendment clarifies that debt buyers are collection agencies.

II. Whether Midland Funding May File Collection Lawsuits in Washington without a License

The second certified question is whether a company, such as Midland Funding, can file lawsuits in the state of Washington on delinquent consumer accounts without being licensed as a collection agency. We hold that it cannot if it is found to be a "collection agency" under former RCW 19.16.100(2) because RCW 19.16.110

unambiguously requires persons acting as a collection agency to first obtain a license.[9]

RCW 19.16.110 provides:

No person shall act, assume to act, or advertise as a collection agency or out-of-state collection agency as defined in this chapter, except as authorized by this chapter, without first having applied for and obtained a license from the director.

All persons who act as a collection agency under the WCAA must obtain a license under RCW 19.16.110.[10] Here, if the district court finds that Midland Funding is a "collection agency," then Midland Funding is in violation of RCW 19.16.110. RCW 19.16.110 unambiguously requires any person acting as a collection agency to obtain a license. Midland Funding acts as a collection agency if it solicits claims for collection. *See* former RCW 19.16.100(2)(a). This section applies whether or not a collection agency files collection lawsuits.[11]

---

[9] RCW 19.16.260, regarding licensing prerequisites to collection lawsuits, was amended in 2013 to require collections agencies that file lawsuits to collect their *own* claims to allege and prove that they are licensed. *See* LAWS OF 2013, ch. 148, § 3 (adding "its own claim or" to the provision). Because we can and do decide the case pursuant to RCW 19.16.110, we need not analyze the effect of this amendment. We also note that courts have analyzed claims under RCW 19.16.110 separately from claims under RCW 19.16.260. *See Moritz v. Daniel N. Gordon, PC*, 895 F. Supp. 2d 1097, 1112-113 (W.D. Wash. 2012) (finding plaintiff's RCW 19.16.110 claim valid but the RCW 19.16.260 invalid because no evidence defendant violated RCW 19.16.260 simply by violating RCW 19.16.110); *see Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212 (W.D. Wash. 2011) (analyzing RCW 19.16.110 claim first and then turning to RCW 19.16.260 claim).

[10] We note that an entity that originates loans and then merely collects on its own claims would not qualify as a "collection agency" under RCW 19.16.100 and thus would not need to be licensed.

[11] Midland Funding may also need a license under the WCAA if it is found to be an alter ego of its parent, MCM.

## CONCLUSION

To conclude, we answer the first certified question: Yes, the definition of a "collection agency" in RCW 19.16.100 includes debt buyers if the debt buyer solicits claims for collection. We answer the second certified question: No, Midland Funding may not file lawsuits in Washington on delinquent consumer accounts without a license if the district court finds that Midland Funding is a collection agency.

No. 88414-5

Wiggins, J.

WE CONCUR.

Madsen, C.J.

_(signature)_

_(signature)_

Fairhurst, J.

_(signature)_ P.T.

Stephens, J.

González, J.

Gordon McCloud, J.