# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CAVE PROPERTIES, a Washington partnership, and MARCIA WICKTOM, | No. 49073-1-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| CITY OF BAINBRIDGE ISLAND, a Washington municipal corporation, and JOHN and ALICE TAWRESEY, husband and wife and the marital community comprised thereof, | |
| Respondents. | |

MAXA, A.C.J. – Cave Properties and Marcia Wicktom (collectively, Cave) appeal the superior court's dismissal of an action in which Cave asserted both a petition under the Land Use Petition Act (LUPA), chapter 36.70C RCW, and a petition for a writ of review. Cave's action challenged the approval by the City of Bainbridge Island's city council of a "latecomer reimbursement agreement," which generally allows a developer who installs a water system to obtain reimbursement from other persons who later use that system. The approved agreement required Cave to reimburse John and Alice Tawresey if Cave connected its property to a water main that the Tawreseys had constructed. The superior court dismissed both petitions.

We hold that the city council's approval of the Tawreseys' latecomer reimbursement agreement qualified as a land use decision under RCW 36.70C.020(2)(b), and therefore hold that the superior court had jurisdiction under LUPA. We decline to address Cave's challenge to the

superior court's dismissal of the writ of review because Cave presents no argument on that issue. Accordingly, we reverse the superior court's order dismissing Cave's LUPA petition, affirm the court's order dismissing Cave's writ of review, and remand for further proceedings.

FACTS

The Tawreseys were involved in the development of property on Bainbridge Island. To obtain a permit for the development project, they were required to install an eight inch water main along the adjacent public road to serve the new development. The new water main replaced a smaller, four inch water main. The Tawreseys subsequently requested that the City enter into a latecomer reimbursement agreement to allow them to recoup some of the costs of construction from property owners who connected to the new water main in the future.

The City prepared an agreement establishing that the owners of property in an identified reimbursement area would have to pay certain reimbursement charges before connecting to the water main. A parcel of property that Cave owned and two additional parcels that the Tawreseys owned were the only undeveloped properties in the reimbursement area. The established reimbursement charge was approximately $287 per frontage foot for each lot. The agreement reflected that Cave's property had 330 feet of frontage along the water main, meaning that the total reimbursement charge for that property would be $94,920.52. The agreement did not allocate any charges to developed properties fronting the water main.

The City notified Cave of the proposed latecomer reimbursement agreement, as required by local ordinance. Cave requested a public hearing before the city council to review the agreement. A hearing was held on February 16, 2016 and then was continued to March 8. At the hearing, both Cave and the Tawreseys submitted materials. Cave argued that the agreement

2

was inappropriate, questioning certain construction invoices, how developable land was figured in the reimbursement formula, and the length of the water line. The city council voted to approve the agreement even though one council member noted that there were procedural irregularities." Clerk's Papers (CP) at 32. The City's public works director then signed the agreement on behalf of the City.

Cave appealed the city council's decision to superior court in a pleading titled "Land Use Petition or Petition for Writ of Review." CP at 3. Cave claimed that the superior court had jurisdiction under both LUPA and chapter 7.16 RCW, which concerns writs of certiorari, mandamus, and prohibition. Cave challenged the cost of installing the water system and the assessment formula for the latecomer reimbursement agreement and asserted that the city council's actions were erroneous in a number of ways.

The City filed a motion to dismiss Cave's petitions, arguing that the superior court had no jurisdiction over the LUPA petition because the city council's decision was not a "land use decision" as defined in the act and that a writ of review was inapplicable because that decision was not quasi-judicial. The Tawreseys joined the City's motion. The superior court granted the motion to dismiss.

Cave appeals the dismissal of its petitions.

ANALYSIS

A.     LEGAL PRINCIPLES

LUPA is the exclusive means (with limited exceptions) by which superior courts obtain subject matter jurisdiction to provide judicial review of land use decisions by local jurisdictions. RCW 36.70C.030(1). However, superior courts have no jurisdiction under LUPA unless the

3

appeal involves a "land use decision" as defined in that statute. *Durland v. San Juan County*, 182 Wn.2d 55, 64, 340 P.3d 191 (2014). If the challenged action is not a land use decision, the superior court must dismiss the LUPA appeal. *See Conom v. Snohomish County*, 155 Wn.2d 154, 157, 118 P.3d 344 (2005). We review de novo whether a superior court has jurisdiction under LUPA. *Id.*

Whether LUPA applies often impacts when an appeal must be filed. Under LUPA, a land use decision must be appealed within 21 days. RCW 36.70C.040(3). If LUPA does not apply, an appeal may be filed much later. *See, e.g.*, chapter 7.16 RCW (allowing for writs of certiorari, mandamus, and prohibition); *Coballes v. Spokane County*, 167 Wn. App. 857, 865-67, 274 P.3d 1102 (2012) (explaining the writ of certiorari).

The meaning of "land use decision" depends on our interpretation of RCW 36.70C.020(2), which defines that term. We review de novo questions of statutory interpretation. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The purpose of statutory interpretation is to determine and give effect to the legislature's intent. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014). To determine legislative intent, we first look to the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, and the statutory scheme as a whole. *Id.* If the statute defines a term, we must rely on that provided definition. *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 454, 266 P.3d 881 (2011). If not, we may refer to dictionary definitions for guidance. *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015).

A statute is unambiguous if the plain language of the statute is susceptible to only one reasonable interpretation. *See Gray*, 181 Wn.2d at 339. When a statute is unambiguous, we

apply the statute's plain meaning as an expression of legislative intent without considering other sources of such intent. *Jametsky*, 179 Wn.2d at 762.

B.     STATUTORY BASIS FOR LATECOMER FEES

Both Washington statutes and the Bainbridge Island Municipal Code govern how a property owner may obtain reimbursement for construction expenses after constructing or improving a water system. They allow a developing owner to obtain reimbursement from other property owners who subsequently connect to that system.

1.     The Municipal Water and Sewer Facilities Act

The Municipal Water and Sewer Facilities Act, chapter 35.91 RCW, was adopted to enable the construction or improvement of water facilities and sewer systems. *See* RCW 35.91.010. The act provides a process through which a property owner who funds such construction or improvement projects (hereinafter "developing owner") can obtain reimbursement for their costs from other property owners who later connect to or use the water or sewer facilities. RCW 35.91.020(2). The reimbursement amounts collected from other property owners are called "latecomer fees." RCW 35.91.015(1).

When a municipality's ordinances require water or sewer facilities to be constructed or improved at the developing owner's sole expense as a prerequisite to further property development, the municipality must contract with that owner for the construction or improvement of those facilities. RCW 35.91.020(1)(a). The contract must include a section that allows for pro rata reimbursement to the developing owner of a portion of the construction costs incurred. RCW 35.91.020(2). This reimbursement must be from latecomer fees, paid by property owners who subsequently connect to or use the water or sewer facilities but who did not

contribute to their original cost. RCW 35.91.020(2). The contract must contain further conditions as required by the particular municipality. RCW 35.91.020(1)(a).

RCW 35.91.040 provides preconditions for another person to use the facility to benefit his or her property. A person who wants a permit to use the facility must first pay to the municipality whatever amount is required under the developing owner's contract. RCW 35.91.040(1). If the person does not pay, the municipality may remove any unauthorized connection. RCW 35.91.040(1).

2.    Latecomer Reimbursement Agreements Under the BIMC

The Bainbridge Island Municipal Code provisions governing latecomer reimbursement for the construction of water systems, BIMC chapter 13.32, are consistent with RCW 35.91.020 and add additional procedural requirements.

The BIMC provides for two types of agreements: (1) a "utility extension agreement" as defined in BIMC 13.32.030, which is an agreement between the City and a developing owner for the construction of utility improvements as contemplated in RCW 35.91.020(2), and (2) a "latecomer reimbursement agreement" as described in BIMC 13.32.160. Under BIMC 13.32.040, the developing owner must submit an application to the City to construct a utility improvement. The application for a utility extension agreement must designate whether the developing owner will request latecomer reimbursement. BIMC 13.32.040.

A request to require latecomer reimbursement must include certain information, including a map of the proposed reimbursement area, the estimated cost for the utility improvement, and a proposed method for calculating pro rata reimbursement charges. BIMC 13.32.100. BIMC 13.32.080 states that a developing owner who complies with the requirements

of chapter 13.32 and constructs utility improvements pursuant to a utility extension agreement "shall receive latecomer reimbursement from owners of real property abutting the utility improvements" who did not contribute to the cost of the utility improvements, are within the established reimbursement area, have been assessed a reimbursement charge, and connect to improvements within 15 years.[1]

After the utility improvements are complete, the developing owner must submit all data and information in support of the cost of improvements. BIMC 13.32.120. Based on this information, the public works director calculates a pro rata reimbursement charge and reimbursement area. BIMC 13.32.130. One permissible method for determining the pro rata reimbursement charge is based on the front footage of the parcel along the improvements. BIMC 13.32.130. The City then sends an original latecomer reimbursement agreement to the developing owner to sign. BIMC 13.32.150.

After the developing owner executes the latecomer reimbursement agreement, the public works director must send official notice of the recommended reimbursement charge and area to the property owners subject to reimbursement. BIMC 13.32.170. The notice must include an opportunity to request a hearing before the city council. BIMC 13.32.170.

If any property owner requests a hearing, the City must schedule a hearing during a regular city council meeting and provide notice of the hearing to the developing owner and property owners subject to reimbursement. BIMC 13.32.170. After the hearing, the city council

---

[1] In addition, BIMC 13.10.050(C) states that if installed water mains "provide service or benefits to properties other than those owned by the water main installer, such installer shall receive latecomer reimbursement from the owners of such properties in accordance with Chapter 13.32 BIMC."

must approve, disapprove, or modify the recommended reimbursement charge and area. BIMC 13.32.180. The city council's decision is the City's final action on the reimbursement charge and area. BIMC 13.32.180.

C.     LUPA JURISDICTION

Cave argues that the city council's approval of the latecomer agreement constituted a land use decision under LUPA, and therefore the superior court erred by dismissing Cave's LUPA petition for lack of subject matter jurisdiction. We agree.

1.     Definition of "Land Use Decision"

As discussed above, a superior court reviews LUPA petitions in an appellate capacity and therefore has jurisdiction only as conferred by the statute. *Durland*, 182 Wn.2d at 64. LUPA provides appellate jurisdiction only over a "land use decision" as defined in RCW 36.70C.020(2). *Durland*, 182 Wn.2d at 64. If the city council's approval of the Tawreseys' latecomer reimbursement agreement was a land use decision, the superior court had jurisdiction over Cave's LUPA petition.

LUPA contains the following definition of "land use decision":

[A] final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
(a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used . . . ;
(b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and
(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. . . .

8

RCW 36.70C.020(2). The issue here is whether the city council's decision to approve the latecomer reimbursement charge and area qualifies as a land use decision under subsections (2)(a) or (2)(b).

2. RCW 36.70C.020(2)(a): Application for Governmental Approval

The first category of land use decision, defined in RCW 36.70C.020(2)(a), requires: (1) an application; (2) for a project permit or other government approval; (3) required by law before real property may be improved, developed, modified, sold, transferred, or used.

The approval process for latecomer reimbursement agreements meets the first two elements of the (2)(a) definition. First, the Tawreseys had to submit "an application for latecomer reimbursement" on an approved form along with the utility improvement application. BIMC 13.32.100. Second, the Tawreseys had to obtain government approval of the latecomer reimbursement agreement. The public works director ultimately determined the reimbursement charge and reimbursement area that would be incorporated into the agreement and the city council approved the agreement.

However, the third element is not satisfied. The law did not require the Tawreseys to enter into a latecomer reimbursement agreement *before* they could develop or use their property. By the time the city council approved the agreement, the Tawreseys already had obtained permits for their development and installed the required water main. The application for latecomer reimbursement affected only the Tawreseys' ability to recoup some of their development expenses.

Cave seems to argue that approval of the latecomer reimbursement agreement was required for the Tawreseys to develop their property because the application for the agreement

9

had to be submitted with the application for installation of the water main. But the BIMC makes clear that the process to approve the utility extension is separate from the process to approve reimbursement. A developing owner's request for a latecomer reimbursement agreement and the terms of that agreement are not factors in the City's decision to approve a utility extension agreement. *See* BIMC 13.32.040, .050. In fact, the City does not begin considering the applicable reimbursement charges and area until after the utility installation is complete. BIMC 13.32.120, .130.

The Tawreseys were not required by law to obtain approval of a latecomer reimbursement agreement *before* their property could be improved, developed, modified, transferred, or used. Therefore, we hold that the city council's decision on the latecomer reimbursement agreement was not a land use decision under RCW 36.70C.020(2)(a).

3. RCW 36.70C.020(2)(b): Interpretative or Declaratory Decision

a. Failure to Argue Application of (2)(b)

Initially, the City argues that Cave did not sufficiently raise the applicability of RCW 36.70C.020(2)(b) in superior court or in its appeal brief, and therefore under RAP 2.5(a) we should not consider the applicability of that section. We disagree.

The City is correct that Cave did not expressly reference subsection (2)(b) and quoted only from subsection (2)(a) in its superior court brief. We generally do not consider arguments on an issue that a party did not make in the superior court. *Silverhawk, LLC v. KeyBank Nat'l Ass'n*, 165 Wn. App. 258, 265, 268 P.3d 958 (2011). However, when an argument is related to the issues addressed in the superior court, we may exercise our discretion to consider newly-

articulated theories for the first time on appeal. *Mavis v. King County Pub. Hosp. No. 2*, 159 Wn. App. 639, 651, 248 P.3d 558 (2011).

In the superior court, Cave cited to chapter 36.70C RCW and generally argued that the city council's decision was a land use decision. The court and the opposing parties knew that RCW 36.70C.020(2) defined land use decision and had the opportunity to address all its subdivisions. We exercise our discretion to consider the applicability of RCW 36.70C.020(2)(b) despite Cave's failure to expressly address this subsection in the superior court.

The City also is correct that Cave in its appellate brief did not expressly reference subsection (2)(b) and quoted only from subsection (2)(a). We generally do not address arguments the parties do not make in their appeal briefs. *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). However, again Cave cited to chapter 36.70C RCW and generally argued that the city council's decision was a land use decision. And Cave cited and discussed *Vern F. Sims Family Ltd. P'ship I v. City of Burlington*, No. 73608-6-I (Wash. Ct. App. July 5, 2016) (unpublished) https://www.courts.wa.gov/opinions/pdf/736086.pdf. The court in *Sims* addressed only RCW 36.70C.020(2)(b) in ruling that a land use decision had occurred. *Id.* at 11-12.

Although Cave's briefing on appeal could have been more specific, Cave addressed whether the city council's approval of the latecomer reimbursement agreement was a land use decision under RCW 36.70C.020 and the discussion of *Sims* was sufficient to raise the applicability of subsection (2)(b).

b.    Applicability of Subsection (2)(b)

The second category of land use decision, defined in RCW 36.70C.020(2)(b), requires: (1) an interpretative or declaratory decision, (2) regarding the application to a specific property, (3) of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property.

Cave argues that the latecomer reimbursement agreement process regulated the development and use of *its* property by imposing a reimbursement charge if that property connects to the water main.  The city council's approval of the Tawreseys' latecomer reimbursement agreement meets each element of the (2)(b) definition.

First, the approval must be a declaratory decision.  RCW 36.70C.020(2)(b).  Because LUPA does not define this term and there are no cases addressing the term in a LUPA context, we refer to dictionary definitions.  *Nissen*, 183 Wn.2d at 881.  "Declaratory" is defined as "serving to declare, set forth, or explain" and another definition is "declaring what is the existing law."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 586 (2002).  One definition of "decision" is "a determination arrived at after consideration."  *Id.* at 585.  Under these definitions, the city council's approval of the proposed latecomer reimbursement agreement was a declaratory decision in that it declared the City's final action on the agreement.  *See* BIMC 13.32.180.

The Tawreseys argue that the city council did not make any interpretive or declaratory findings.  But by approving the agreement's terms, the city council necessarily declared the City's position regarding those terms.

Second, the ordinances governing latecomer reimbursement and the agreement adopted pursuant to those ordinances applied to a specific property – the parcel owned by Cave. Under the terms of the approved latecomer reimbursement agreement, the city council's decision established that the Cave property would be subject to the established reimbursement charges if it connected to the new water main.

The third element requires that the declaratory decision involve ordinances that regulate the development and use of real property. The latecomer reimbursement agreement was developed pursuant to the City's ordinances. And the ordinances "regulated" Cave's use and development of its property. The agreement provided that Cave must pay a significant charge if it engages in any development of its property that requires a connection to the upsized water main. Imposing a fee as a condition for property development can constitute a land use decision. *See James v. Kitsap County*, 154 Wn.2d 574, 586, 115 P.3d 286 (2005) (holding that imposition of impact fees as a condition for the issuance of a building permit is a land use decision).

Cave cites to *Sims*, an unpublished decision of Division One of this court.[2] In *Sims*, a developer entered into a latecomer reimbursement agreement with the City after making street improvements. *Sims*, slip op. at 4-5. The authorizing statute, RCW 35.72.010, stated that persons within the assessment reimbursement area who developed their property during a certain period of time were required to pay a reimbursement assessment. *Id.* at 2. The city council voted to approve the latecomer reimbursement agreement. *Id.* at 6.

---

[2] Under GR 14.1(a), an unpublished court of appeals decision filed on or after March 1, 2013 may be cited as nonbinding authority, and may be accorded such persuasive value as we deem appropriate. GR 14.1(c) provides that appellate courts should not cite or discuss unpublished decision "unless necessary for a reasoned decision." We discuss *Sims* here because it is the only case we have located that addresses the issue presented in this case.

On appeal, the issue was whether the city council's approval was a land use decision under RCW 36.70C.020(2). *Sims*, slip op. at 11-12. The court held that the city council's approval of the latecomer reimbursement agreement was a land use decision under subsection (2)(b):

> The city council's determination mandated that should Sims or others decide to develop their property within the assessment area during the period of the latecomer agreement, once executed, they would have to pay assessments for benefits received pursuant to the latecomer agreement. Clearly, this was a land use decision.

*Id.*

The facts in *Sims* are similar but not identical to the facts here. As in this case, the latecomer reimbursement agreement in *Sims* required property owners within the assessment reimbursement area to contribute to the cost of local improvements. However, the reimbursement payments in *Sims* were mandatory if the property owners wanted to complete *any* development during the duration of the latecomer agreement. *Id.* The latecomer agreement at issue here is not so broad, and payment of a reimbursement charge is required only if Cave intends to connect to the water main. *Sims* is therefore instructive, but it is not directly on point here.

Highlighting this distinction, the City emphasizes that Cave is not *required* to pay the latecomer fee because nothing requires Cave to connect to the water main.[3] The City argues that subsection (2)(b) cannot apply because, if Cave does not want to pay the assessment, it can simply connect to a different line not covered by the agreement or not connect at all. The

---

[3] The City does not directly address RCW 36.70C.020(2)(b) because of its position that Cave did not properly raise the issue. But it makes this argument in another context, and it is relevant to subsection (2)(b).

Tawreseys make the same argument, claiming that the city council's approval of the latecomer reimbursement agreement did not control Cave's use or development of its property because Cave did not have to connect to the water main.

It appears possible that Cave could develop its property without connecting to the upsized water main. The map of the reimbursement area shows that, although the west side of Cave's parcel abuts the upsized water main, the east side of the parcel abuts another road that could have a water main. And Cave possibly could obtain water from some other source. However, the city council's determination cannot logically turn on whether connection to the water main was *necessary* for Cave to develop its property because that fact was unknown when the city council approved the agreement. Because the appeal period for a land use decision under LUPA is 21 days, Cave could not wait to see if it needed to connect to the water main before appealing the city council's approval.

Further, even if Cave had other water options, the latecomer reimbursement agreement still "regulated" Cave's property by imposing a reimbursement charge on the most obvious option – connecting to a water main that runs along 330 feet of its property.

We hold that the city council's approval of the terms of the latecomer reimbursement agreement qualifies as a land use decision under RCW 36.70C.020(2)(b). Therefore, we hold that the superior court had jurisdiction over Cave's petition under LUPA.

D.    WRIT OF REVIEW

Cave assigns error to the superior court's dismissal of its writ of review petition. We decline to consider this issue because Cave presented no argument in its appeal brief regarding the writ of review.

No. 49073-1-II

We generally do not consider an assignment of error if the appellant presents no argument on that assignment of error. *Shelcon Constr. Grp., LLC v. Haymond*, 187 Wn. App. 878, 889, 351 P.3d 895 (2015). Cave's brief contains only one passing reference to the writ of review, and Cave does not explain why the superior court erred in denying the writ of review. Because Cave presented no argument regarding the writ of review, we decline to consider whether the superior court erred in dismissing it.

CONCLUSION

We reverse the superior court's order dismissing Cave's LUPA petition, affirm the court's order dismissing Cave's writ of review, and remand for further proceedings.

MAXA, A.C.J.

We concur:

LEE, J.

SUTTON, J.

16