# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PIONEER SQUARE HOTEL COMPANY and APH CORPORATION, Washington corporations, | DIVISION ONE |
| Appellants, | No. 80000-1-I |
| v. | PUBLISHED OPINION |
| THE CITY OF SEATTLE, acting through the SEATTLE PUBLIC UTILITIES, | FILED: February 18, 2020 |
| Respondent. | |

DWYER, J. — Pioneer Square Hotel Company (Pioneer) appeals from the trial court's summary judgment order dismissing its declaratory and injunctive relief claims against the City of Seattle (City). In dismissing the claims, the trial court characterized Pioneer's action as a land use petition subject to the 21-day statutory limitation period of the Land Use Petition Act[1] (LUPA). We reverse; LUPA and its procedural rules do not govern this action.

I

Pioneer is improving a property in Seattle's Pioneer Square neighborhood located at 110 Alaskan Way South. As part of this process, Pioneer was required to obtain a multiple use permit (MUP) and a building permit from the Seattle Department of Construction and Inspections (SDCI) (formerly the Department of Construction and Land Use). Once these permits were obtained,

---

[1] Ch. 36.70C RCW.

Pioneer was required to obtain a water availability certificate (WAC) from Seattle Public Utilities (SPU) before its property could be connected to the City's water supply system. SPU issued a WAC in 1999 certifying that water was available from an existing 6-inch diameter water main on Alaskan Way South.

However, construction of the improvement, a 33-unit hotel addition, was significantly delayed for reasons unrelated to the present litigation. During the intervening period, the WAC issued in 1999 expired. Accordingly, when Pioneer approached SPU seeking activation of a meter on the existing 6-inch water main on Alaskan Way South, SPU required that Pioneer apply for a new WAC.

Pioneer did so. On January 29, 2018, SPU issued a new water availability determination, coupled with WAC 20180049, which was not to take effect until Pioneer contracted to install a new 8-inch water main running from Yesler Way, north of the property, to the existing 6-inch main. SPU was to own and operate this main upon its successful installation. Three days later, SPU issued a revised determination, which required Pioneer to contract for construction of a 12-inch main, with an accompanying WAC 20180136. The reason given for the change was a clerical error in the prior determination—applicable regulations required 8-inch mains to serve new developments in residentially zoned areas but required 12-inch mains for new developments that, as with Pioneer's hotel, lie in commercially zoned areas. Again, SPU was to own and operate the new main.

Pioneer appealed this determination to SPU's manager level review committee on February 15, 2018. Pioneer offered evidence that the 6-inch main was adequate for its property's needs and that requiring it to install a 12-inch

main was unnecessary and burdensome. On March 19, Pioneer received SPU's manager level determination, which stated:

> The existing 6-inch water main in Alaskan East Roadway Way is not well documented and may not fully support new water services after the reconstruction of Alaskan Way. The new requirement is to design and install approximately 80 feet of 8-inch ductile iron restrained joint pipe from the existing 12-inch water main in Alaskan Way South, crossing Alaskan Way to the south Alaskan Way parcel boundary. New water services will be provided from the new 8-inch ductile iron pipe. A new Water Availability Certificate will be issued to reflect the changes in the water main extension requirement.

Pursuant to this decision, SPU issued WAC 20180570, again not to take effect until these new requirements were met. This determination provided for appeal to SPU's director if Pioneer was unsatisfied. Pioneer so appealed. On May 15, 2018, SPU Director Jeff Bingaman conveyed to Pioneer SPU's director level determination. This determination, again, rejected Pioneer's proposal to use the existing 6-inch water main, and clarified that WAC 20180570 should require a 12-inch and not an 8-inch water main—one which would be owned, operated, and maintained by SPU upon being completed. In the alternative, Pioneer was offered the option of installing two private water lines, one 4-inch main and one 2-inch main, connecting across Alaskan Way South to a 12-inch main. The determination indicated that SPU would issue a new WAC reflecting Pioneer's preferred option.

Pioneer, instead, contacted both Bingaman and assistant city attorney William Foster, restating its argument in favor of allowing the project to be served by the existing water main. Foster replied that the director level determination contained the City's final position on the matter.

3

In August 2018, Pioneer commenced this action in superior court, seeking a declaratory judgment that the conditions SPU placed on the issuance of a WAC violated RCW 82.02.020, which limits municipal authority to require payments from developers. Pioneer also sought an injunction requiring SPU to activate the meter on the existing 6-inch water main to serve the hotel addition.

The City's answer raised several affirmative defenses: failure to state a claim upon which relief may be granted, lack of subject matter jurisdiction, failure to file a claim, and failure to assert the claim within the applicable statutory limitation period. The City then moved to dismiss the complaint and moved for judgment on the pleadings on the basis that the complaint sought review of a land use decision pursuant to LUPA, and that such review was time-barred by LUPA's 21-day statutory limitation period.

Because Pioneer's memorandum in opposition to this motion was supplemented with a declaration and exhibits including photographs, the City's motion to dismiss was converted to a CR 56 motion for summary judgment. On summary judgment, the trial court dismissed Pioneer's declaratory and injunctive relief claims with prejudice, holding them to be time-barred under LUPA. Pioneer moved for reconsideration of this order on the basis that, because SPU's director level determination offered it two options for proceeding, it was not a final agency determination. The trial court granted this motion and modified its order to dismiss the complaint without prejudice.[2] Pioneer appeals both the original

---

[2] Since this time, the City has in fact issued a new determination and WAC, which has also been appealed to the superior court in a separate action. That action has been stayed pending the result of this proceeding.

dismissal order and the order on its motion for reconsideration, averring that both orders incorrectly characterized its action as a LUPA petition.

II

Pioneer's primary contention on appeal is that the City's decisions that give rise to this court challenge do not fall within the purview of LUPA because they were not "land use decisions." Accordingly, Pioneer argues, LUPA's 21-day limitation period is inapplicable. We agree.

A

The purpose of statutory interpretation is to determine, and give effect to, the intent of the legislature. Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 80, 91, 392 P.3d 1025 (2017). Questions of law regarding the construction of a statute are reviewed de novo for errors of law. McTavish v. City of Bellevue, 89 Wn. App. 561, 564, 949 P.2d 837 (1998). When a statute or ordinance is unambiguous, construction is not necessary, as the plain meaning controls. McTavish, 89 Wn. App. at 565.

LUPA "replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions." RCW 36.70C.030(1). In turn,

> "Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
> (a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property; excluding

applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses;

(b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regarding the improvement, development, modification, maintenance, or use of real property; and

(c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property. However, when a local jurisdiction is required by law to enforce the ordinances in a court of limited jurisdiction, a petition may not be brought under this chapter.

RCW 36.70C.020(2).

Neither party contends that subsection (c) applies to the decision at issue.

The City contends that its determination meets the definition of a land use decision pursuant to either subsection (a) or (b) of RCW 36.70C.020(2).

B

First, we must determine whether the City's action constituted a "land use decision" as that term is defined in RCW 36.70C.020(2)(a). Again, a land use decision as defined in subsection (2)(a) requires:

An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, *but excluding applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property;* excluding applications for legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses.

RCW 36.70C.020(2)(a) (emphasis added). The parties dispute the applicability of the exception contained herein for "applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property."

Pioneer notes that the water mains in question are public property, as is the water that they carry and that Pioneer desires to purchase—the entire water

distribution system to which it seeks connection is owned by the public through SPU. Pioneer asserts that SPU's decisions regarding how adjacent landowners access its public water supply, using public infrastructure in a public right-of-way, fall within the exception in RCW 36.70C.020(2)(a) for "applications for permits or approvals to use, vacate, or transfer streets, parks, and similar types of public property."

Our opinion in Wescot Corp. v. City of Des Moines, 120 Wn. App. 764, 86 P.3d 230 (2004), is instructive. Therein, a construction company sought approval to build a conveyor system for the direct transport of fill material from the waterfront to an inland construction site. Wescot, 120 Wn. App. at 766. Engineering necessity dictated that the conveyor system traverse a city park. Wescot, 120 Wn. App. at 766-67. When the City declined to permit this activity, Wescot filed a LUPA petition. The City contended that LUPA did not apply. Wescot, 120 Wn. App. at 767-68. We agreed, stating:

> Wescot contends that the legislature intended to limit the park use exclusion to minor usages, but this argument finds no support in the actual language of the statute. . . . The statute is constructed so that an application to "use" a "park" is in the same category as an application to vacate a street, or an application to "use, vacate or transfer" other types of public property that are similar to streets and parks. *Read as a whole, the exclusion evinces a legislative intent to treat the decisions a city makes as an owner of public property more deferentially than decisions a city makes as a regulator of private property.*

Wescot, 120 Wn. App. at 769 (emphasis added).

Our reasoning in Wescot is applicable herein. The water availability certification process adopted by SPU requires an application for approval to use public property—the water distribution infrastructure and the water to be

7

purchased are publicly owned and, were Pioneer to construct the new 12-inch water main, that main would also be publicly owned. Subsection (a) exists to recognize and give effect to the distinction between when a government acts as a regulator of private land and when a government acts as a property owner. Here, the City's decision on how and when Pioneer may connect to its water system is a decision it makes "as an owner of public property." Wescot, 120 Wn. App. at 769. As such, it is not a "land use decision," as that term is defined in subsection (a).

C

We now turn to an analysis of RCW 36.70C.020(2)(b). This subsection provides a second definition for a land use decision as:

> An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property.

RCW 36.70C.020(2)(b).

> While LUPA does not define "interpretative,"
>
> The local project review statute, at RCW 36.70B.110(11), requires all jurisdictions planning under the Growth Management Act[3] to adopt procedures for rendering interpretations as to the meaning and application of their adopted land use codes. RCW [36.70C.020(2)(b)] subjects those interpretations to judicial appeal, conditioned of course upon the exhaustion of any internal administrative appeal remedies.

WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK SERIES: LAND USE DEVELOPMENT § 16.2(1) at 16-4 (4th ed. 2012).

---

[3] Ch. 36.70A RCW.

As a jurisdiction subject to the Growth Management Act, Seattle has adopted such a procedure for administrative interpretations of its land use code, which may be found in Title 23 of the Seattle Municipal Code (SMC).[4]

We conclude that an "interpretative decision," within the meaning of subsection (2)(b), is the answer to a legal question. In essence it is a statement along the following lines: This code [or rule, ordinance, or policy] provision[s] applies [or does not apply] to that land [project, application, or proposal]. It is an administrative ruling as to the law that applies to the determination sought by the applicant. Such a ruling—as to whether a particular legal requirement applies to the determination sought—is appealable to superior court under LUPA pursuant to subsection (b). The City actions challenged herein fall without the perimeters of subsection (b).

We must next analyze what is meant by a "declaratory decision." In Cave Properties v. Bainbridge Island, 199 Wn. App. 651, 401 P.3d 327 (2017), Division Two of this court stated:

> Because LUPA does not define [declaratory] and there are no cases addressing the term in a LUPA context, we refer to dictionary definitions. Nissen [v. Pierce County], 183 Wn.2d [863], 881[, 357 P.3d 45 (2015)]. "Declaratory" is defined as "serving to declare, set forth, or explain" and another definition is "declaring what is the existing law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 586 (2002). One definition of "decision" is "a determination arrived at after consideration." Id. at 585.

Cave Properties, 199 Wn. App. at 664.

---

[4] The pertinent section of the land use code states:
A decision by the Director as to the meaning, application, or intent of any development regulation in this Title 23 . . . as it relates to a specific property . . . is known as an "interpretation."
SMC 23.88.020.

In Cave Properties, a landowner appealed from the City of Bainbridge Island's legislative decision to approve a latecomers' reimbursement agreement[5] after the city council held a hearing on the agreement. 199 Wn. App. at 655. This hearing was required to take place if any landowner whose property was subject to the agreement requested it, and after the hearing the city council was required to "approve, disapprove, or modify the recommended reimbursement charge and area." Cave Properties, 199 Wn. App. at 660. On appeal, the court did not hold that the agreement itself was a declaratory decision but, rather, held that the Bainbridge Island City Council, "by approving the agreement's terms, the city council necessarily declared the City's position regarding those terms." Cave Properties, 199 Wn. App. at 664. Thus, as a result of the action of the city's legislative body, the agreement became a rule of the city.

Hence, the Cave Properties court held, the administrative process culminated in a declaratory decision. By contrast, SPU's water availability determinations, including its final decision, do not simply declare that certain city ordinances or rules are applicable to Pioneer's property. Each determination did more than simply declare the state of existing law. Cave Properties, 199 Wn. App. at 664. The city's actions do not fall within RCW 36.70C.020(2)(b)'s definition of a land use decision.

Given that none of the definitions of "land use decision" set forth in RCW 36.70C.020(2) encompass the City's decision herein, LUPA does not apply to

---

[5] A latecomer reimbursement agreement "generally allows a developer who installs a water system to obtain reimbursement from other persons who later use that system." Cave Properties, 199 Wn. App. at 654.

10

Pioneer's action. The trial court thus erred by applying LUPA's 21-day limitation period to this action. It further erred by dismissing Pioneer's action as untimely. The complaint should not have been dismissed. It must be reinstated and further proceedings are warranted.

Reversed and remanded.

WE CONCUR: