# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KITSAP COUNTY, a political subdivision of the State of Washington, | No. 49130-3-II |
| Respondent, | |
| v. | PART PUBLISHED OPINION |
| KITSAP RIFLE AND REVOLVER CLUB, a not-for-profit corporation registered in the State of Washington, | |
| Appellant. | |
| IN THE MATTER OF THE UNPERMITTED SHOOTING FACILITY located at the 72-acre parcel at 4900 Seabeck Highway NW, Bremerton, Washington, *viz* Kitsap County Tax Parcel ID No. 362501-4-002-1006. | |

MAXA, J. – Chapter 10.25 of the Kitsap County Code (KCC) requires all shooting facilities to obtain an operating permit. The Kitsap Rifle and Revolver Club (Club), which operates a shooting facility in Bremerton, refused to apply for a permit. The County filed a complaint against the Club, seeking a declaratory judgment that KCC 10.25[1] was a valid ordinance that was enforceable against the Club. The trial court granted summary judgment in

---

[1] KCC 10.25 involves two articles but the Club challenges only Article 2. Therefore, unless otherwise specified, "KCC 10.25" refers to Article 2 of that ordinance.

favor of the County, ruling that KCC 10.25 was enforceable against the Club and that the Club was required to obtain an operating permit for its shooting facility.

The Club appeals the trial court's summary judgment order, arguing that KCC 10.25 is invalid or unenforceable on various grounds. In the published portion of this opinion, we hold that (1) RCW 9.41.290, which provides that the State has preempted the entire field of "firearms regulation," does not preempt KCC 10.25 because the challenged portion of that ordinance is not a firearms regulation; (2) KCC 10.25 falls within the exception to preemption in RCW 9.41.300(2)(a), which allows ordinances restricting the discharge of firearms where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized; and (3) KCC 10.25 does not infringe on the right to bear arms under the Second Amendment to the United States Constitution or article I, section 24 of the Washington Constitution. In the unpublished portion of the opinion, we reject the Club's additional challenges to KCC 10.25.

Accordingly, we affirm the trial court's summary judgment order and its ruling that KCC 10.25 is enforceable against the Club.

FACTS

*Previous Litigation*

The Club has operated a shooting facility in the same general location in Bremerton since 1926. In 2011, the County filed suit against the Club, alleging that the Club had impermissibly expanded its nonconforming use as a shooting range, engaged in unlawful development activities, and conducted activities that constituted a noise and public safety nuisance. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 265, 337 P.3d 328 (2014), *review denied,* 183 Wn.2d 1008 (2015).

After a bench trial, the trial court ruled that (1) the Club's activities constituted an unlawful expansion of the existing nonconforming use, (2) the Club's use of the property was illegal because it had failed to obtain required permits for the development work, and (3) the Club's activities constituted a nuisance because of noise, safety, and unpermitted land use problems. *Id.* at 266. The trial court issued a permanent injunction prohibiting use of the Club's property as a shooting range until the County issued a conditional use permit. *Id.*

The Club appealed to this court. *Id.* at 266. This court affirmed the trial court on almost all issues, including the finding of a public nuisance based on excessive noise and unsafe conditions. *Id.* at 303. However, the court reversed the trial court's ruling that the remedy for the Club's conduct was termination of its nonconforming use status and remanded for the trial court to determine the appropriate remedy. *Id.* at 262, 303-04. This court issued its opinion on October 28, 2014. *Id.* at 252.

*Adoption of KCC 10.25*

In September 2014, the County adopted Ordinance No. 515-2014. The ordinance added a new chapter to the KCC entitled "Firearms Discharge," which was codified as chapter 10.25 KCC. The effective date was December 22, 2014.

KCC 10.25 required all existing and proposed shooting facilities to obtain an operating permit and provided that the failure to obtain a permit would result in closure of the facility. KCC 10.25.090(1)-(2). In addition, the ordinance required shooting facilities to meet detailed standards. KCC 10.25.090(4).

KCC 10.25.090(2) required all existing shooting facilities to apply for an operating permit within 90 days after the December 22 effective date. The Club did not submit an

application for an operating permit by the deadline and informed the County that it did not intend to apply for a permit. The Club asserted the position that KCC 10.25 was a zoning/land use ordinance that did not apply to its existing shooting facility, which had vested nonconforming use rights.

*Current Litigation*

On March 31, 2015, the County filed a complaint for declaratory and injunctive relief against the Club to enforce KCC 10.25. The County sought a declaration that the Club was in violation of KCC 10.25 and an injunction to prevent the Club from operating its shooting facility until it received an operating permit. The trial court issued a preliminary injunction enjoining the Club from operating its shooting facility until it submitted a complete application for an operating permit in compliance with KCC 10.25.

On March 16, 2016, the Club filed, under protest, an application for an operating permit under KCC 10.25. The next day, the Club filed a motion to dissolve the preliminary injunction. The trial court granted the motion and dissolved the preliminary injunction on April 7.

The trial court subsequently granted summary judgment in favor of the County. The court ruled that RCW 9.41.290 did not preempt KCC 10.25 because the ordinance was not a firearms regulation and because the preemption exclusion of RCW 9.41.300(2)(a) applied. In a footnote, the court summarily rejected the Club's argument that KCC 10.25 violated the right to bear arms. The court concluded that KCC 10.25 was enforceable against the Club's shooting facility and that operation of the facility without an operating permit was a violation of KCC 10.25.

The Club appeals the trial court's summary judgment order.

ANALYSIS

A.      STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The interpretation and application of a statute is a matter of law that we also review de novo. *Blue Diamond Grp., Inc. v. KB Seattle 1, Inc.*, 163 Wn. App. 449, 453-54, 266 P.3d 881 (2011).

B.      PROVISIONS OF KCC 10.25

Chapter 10.25 KCC, which is titled "Firearms Discharge," contains two articles. Article 1 is titled "No-Shooting Areas." The provisions in that article prohibit the discharge of firearms in certain areas, but they also provide an exception for the discharge of firearms on a shooting range complying with Article 2. KCC 10.25.020, 030. Article 2 is titled "Shooting Ranges," and requires that all existing and proposed shooting facilities obtain an operating permit and provides that the failure to obtain a permit would result in closure of the facility. KCC 10.25.090(1)-(2). The Club challenges only the provisions of Article 2, which encompasses KCC 10.25.060 – 10.25.140.

KCC 10.25.060 provides that the purpose of KCC 10.25 "is to provide for and promote the safety of the general public by establishing a permitting procedure and rules for the

development and operation of shooting range facilities" and that the adopted standards "are intended to protect and safeguard participants, spectators, neighboring properties and the public."

KCC 10.25.090(1) states that shooting facilities must be authorized and operated in accordance with a County-issued operating permit. Under the permitting scheme, no existing or proposed shooting facility is allowed to operate without an operating permit issued pursuant to KCC 10.25. KCC 10.25.090(1). The owner or operator of a shooting facility must apply for and obtain an operating permit. KCC 10.25.090(2). Failure to obtain a permit will result in closure of the facility until a permit is issued. KCC 10.25.090(1).

To receive an operating permit, shooting facilities are required to submit an application that includes (1) the facility's safety plan, (2) the shooting facility layout and design, and (3) an expert evaluation of the safety plan and facility design performed either by a National Rifle Association (NRA) shooting range advisor or an engineer with expertise in the design of shooting ranges. KCC 10.25.090(5). In reviewing a permit application, the County is guided by the NRA's "Range Source Book." KCC 10.25.090(3).

KCC 10.25.090(4) outlines the specific standards for shooting facilities, which are meant to ensure containment of projectiles and to minimize noise disturbances. The standards include general requirements for containment structures. They also include requirements that shooting facilities have a safety officer present when open to the public, but at times when the facility is not open to the public, a staff member trained in the range's safety plan is sufficient. KCC 10.25.090(4)(d). Finally, KCC 10.25 provides time and frequency limits for certain uses and activities. KCC 10.25.090(4)(f), (g), (l).

C.     APPLICABILITY OF STATE LAW PREEMPTION

The Club argues that KCC 10.25 is unenforceable because it is preempted under RCW 9.41.290, which provides for state law preemption of firearms regulations. We hold that (1) RCW 9.41.290 does not apply here because KCC 10.25 is not a firearms regulation, and (2) even if RCW 9.41.290 did apply, KCC 10.25 falls within the exception to preemption in RCW 9.41.300(2)(a) for "where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized."[2]

1.     Legal Principles

a.     Police Power Authority of Local Governments

Under article XI, section 11 of the Washington Constitution, a local government has authority to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Similarly, RCW 36.32.120(7) authorizes counties to "[m]ake and enforce, by appropriate resolutions or ordinances, all such police and sanitary regulations as are not in conflict with state law." Local governments have "considerable latitude in exercising police powers," and a regulation is reasonable "if it promotes public safety, health or welfare and bears a reasonable and substantial relation to accomplishing the purpose pursued." *City of Seattle v. Montana*, 129 Wn.2d 583,591-92, 919 P.2d 1218 (1996).

However, a local ordinance will be deemed to conflict with state law when the legislature has stated its intent to preempt the field on a particular subject. *See State v. Kirwin*, 165 Wn.2d

---

[2] The County argues that even if KCC 10.25 qualifies as firearms regulation, there can be no preemption here because RCW 9.41.290 applies only to local ordinances that, unlike KCC 10.25, impose criminal penalties. Because we affirm on other grounds, we do not address this argument.

818, 826, 203 P.3d 1044 (2009). In that situation, local ordinances on the subject are preempted and rendered invalid. *Id.* We must interpret an express preemption clause narrowly but fairly. *See Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 184 Wn.2d 176, 184, 357 P.3d 650 (2015) (addressing federal preemption of state law), *cert. denied*, 136 S. Ct. 1453 (2016).

      b.    Preemption of Firearms Regulations

RCW 9.41.290 expressly provides that state law preempts all local firearms regulations, including those involving the discharge of firearms:

> *The state of Washington hereby fully occupies and preempts the entire field of firearms regulation* within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, *discharge*, and transportation *of firearms*, or any other element *relating to firearms* or parts thereof, including ammunition and reloader components. Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law, as in RCW 9.41.300, and are consistent with this chapter. Such local ordinances shall have the same penalty as provided for by state law. Local laws and ordinances that are inconsistent with, more restrictive than, or exceed the requirements of state law shall not be enacted and are preempted and repealed, regardless of the nature of the code, charter, or home rule status of such city, town, county, or municipality.

(Emphasis added).

As noted in RCW 9.41.290, certain exceptions to preemption are provided in RCW 9.41.300. One exception applies to the discharge of firearms:

> (2) Cities, towns, counties, and other municipalities may enact laws and ordinances:
>
> (a) Restricting the discharge of firearms in any portion of their respective jurisdictions *where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized.* Such laws and ordinances shall not abridge the right of the individual guaranteed by Article I, section 24 of the state Constitution to bear arms in defense of self or others.

RCW 9.41.300(2)(a) (emphasis added).

c.    Statutory Interpretation

Whether a statute has preemptive effect is a question of law that we review de novo. *Lawson v. City of Pasco*, 168 Wn.2d 675, 678, 230 P.3d 1038 (2010).  The purpose of statutory interpretation is to determine and give effect to the legislature's intent.  *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014).  To determine legislative intent, we first look to the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, and the statutory scheme as a whole.  *Id.*

A statute is unambiguous if the plain language of the statute is susceptible to only one reasonable interpretation.  *Id.*  When a statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent without considering other sources of such intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014).

2.    Preemption Under RCW 9.41.290

The Club argues that RCW 9.41.290, which provides that the state has preempted "the entire field of firearms regulation," preempts KCC 10.25.  We disagree and hold that KCC 10.25 is not a "firearms regulation."

The legislature did not define "firearms regulation."  RCW 9.41.290 states only that the preemption includes "the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms, or any other element relating to firearms."  The Club argues that preemption under RCW 9.41.290 applies because KCC 10.25 regulates the discharge of firearms.

Several factors support the conclusion that RCW 9.41.290 does not preempt KCC 10.25. First, RCW 9.41.290 does not make any reference to the regulation of shooting facilities.  In

9

addition, nothing in chapter 9.41 RCW pertains to shooting facilities. The multiple provisions in that chapter primarily focus on the possession, delivery, sale, and use of firearms. There is no indication that the legislature intended to preempt local ordinances requiring shooting facilities to obtain operating permits.

Second, unlike Article 1 of KCC 10.25, Article 2 does not prohibit or expressly regulate the discharge of firearms.[3] Instead, the ordinance regulates "shooting facilities." KCC 10.25.060 states that the purpose of KCC 10.25 is to "provide for and promote the safety of the general public by establishing a permitting procedure and rules for the development and operation of shooting range facilities." Enforcement of KCC 10.25 may have an indirect impact on the discharge of firearms in that an unlicensed shooting facility could not lawfully allow a person to discharge a firearm there. But KCC 10.25 imposes requirements only on owners and operators of shooting facilities, not on the individuals who discharge firearms at those facilities. And nothing in Article 2 of KCC 10.25 would affect a person's ability to discharge a firearm anywhere else in the county.

As the Club argues, KCC 10.25 does indirectly involve the discharge of firearms. Shooting facilities provide a place where people can discharge firearms. KCC 10.25.070(21) defines "shooting facility" as a site having one or more shooting ranges, and KCC 10.25.070(22) defines "shooting range" as a place designated for the safe "discharge of firearms." And the required standards for shooting facilities primarily involve measures designed to make the

---

[3] Article 1 of KCC 10.25 clearly regulates the discharge of firearms; KCC 10.25.020 expressly prohibits the discharge of firearms in certain areas. But the Club does not challenge Article 1.

discharge of firearms safe. KCC 10.25.090(4). But RCW 9.41.290 does not extend the scope of preemption to any local ordinance that indirectly affects the discharge of firearms.

Third, RCW 9.41.290 expressly acknowledges that local governments may enact laws and ordinances relating to firearms as long as they are "authorized by state law . . . and are consistent with this chapter." As noted above, RCW 36.32.120(7) authorizes counties to "[m]ake and enforce, by appropriate resolutions or ordinances, all such police and sanitary regulations as are not in conflict with state law." Therefore, KCC 10.25's requirement that a shooting facility obtain an operating permit is an exercise of the County's police power that is authorized under state law. And KCC 10.25 is not inconsistent with chapter 9.41 RCW, which as discussed above does not address shooting facilities.

Fourth, although the Club claims that the scope of RCW 9.41.290 is broad, the Supreme Court cases addressing RCW 9.41.290 have limited the scope of preemption. In *Cherry v. Municipality of Metropolitan Seattle*, the court addressed a policy of the Municipality of Metropolitan Seattle (Metro) that prohibited employees from possessing concealed weapons while on duty or on Metro property. 116 Wn.2d 794, 795, 808 P.2d 746 (1991). The court concluded that RCW 9.41.290 did not preempt "the authority of a municipal employer to regulate or prohibit a municipal employee's possession of firearms while on the job or in the workplace." *Id.* at 803.

In *Pacific Northwest Shooting Park Association v. City of Sequim*, the court addressed a city's conditions for issuing a temporary use permit to hold a gun show at the City's convention center. 158 Wn.2d 342, 346-47, 144 P.3d 276 (2006) (*PNSPA*). The court concluded that RCW

11

9.41.290 did not prohibit a municipal property owner from imposing conditions on the sale of firearms relating to a permit for private use of its property. *Id.* at 357.

In *Watson v. City of Seattle*, the court addressed a city ordinance that imposed a tax on firearms and ammunition sales. 189 Wn.2d 149, 155, 401 P.3d 1 (2017). The court held that RCW 9.41.290 did not apply to the taxation of firearm sales because taxation did not constitute a "regulation" of firearms. *Id.* at 172-73, 176.

Although these cases are not directly on point, *Watson* in particular suggests that RCW 9.41.290 is inapplicable here. If the taxation of firearms sales is not considered the regulation of firearms, then the licensing of shooting facilities also should not be viewed as a firearms regulation under RCW 9.41.290.

We hold that RCW 9.41.290 does not apply because KCC 10.25 is not a "firearms regulation." Therefore, we hold that KCC 10.25 is not preempted and is enforceable against the Club.

3.    Exception to Preemption Under RCW 9.41.300(2)(a)

The County argues that even if KCC 10.25 is a "firearms regulation" that is preempted under RCW 9.41.290, preemption does not apply here under the exception to preemption stated in RCW 9.41.300(2)(a). We agree.[4]

As stated in RCW 9.41.290, local governments are not preempted from enacting ordinances relating to firearms that are specifically authorized by RCW 9.41.300. RCW 9.41.300(2)(a) provides that counties may enact ordinances restricting the discharge of firearms

---

[4] Although we can affirm based on our holding in the previous section, we address this issue to complete our analysis of the Club's claim.

"where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized." This exception authorizes local governments to regulate the discharge of firearms "in areas where people, domestic animals, or property would be endangered." *City of Seattle v. Ballsmider*, 71 Wn. App. 159, 163, 856 P.2d 1113 (1993).

      a.    Application of Exception

The County adopted KCC 10.25 because shooting ranges create a risk of danger to people and property. The preamble to Ordinance No. 515-2014, which adopted KCC 10.25, states that "the County has an interest . . . in minimizing potential safety hazards created by the operation of shooting ranges." Clerk's Papers (CP) at 15. The preamble also expressly acknowledges that "RCW 9.41.300(2) provides that a county may also, by ordinance, restrict the discharge of firearms in any portion of its jurisdiction where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized." CP at 15. Finally, the preamble concludes with an express finding that "the requirement of an operating permit for the establishment and operation of all shooting ranges provides assurance of the safe conduct of recreational and educational shooting activities in Kitsap County." CP at 15.

In addition, KCC 10.25.060 expressly states that the purpose of the ordinance is to protect humans and property:

> The purpose of this Article is to provide for and promote the *safety of the general public* by establishing a permitting procedure and rules for the development and operation of shooting range facilities. The shooting range standards adopted herein are intended to *protect and safeguard* participants, spectators, *neighboring properties and the public*.

(Emphasis added.)

13

These legislative statements are sufficient to establish, as required under RCW 9.41.300(2)(a), that KCC 10.25 was enacted to address the reasonable likelihood that the operation of shooting ranges would jeopardize humans and property.

b.    Sufficiency of Findings in KCC 10.25

The Club and amicus NRA argue that KCC 10.25 does not fall within the preemption exception in RCW 9.41.300(2)(a) because the County did not establish what is required in that statute. They claim that for RCW 9.41.300(2)(a) to apply, the County was required to make specific legislative findings showing that shooting ranges present a "reasonable likelihood that humans, domestic animals, or property will be jeopardized" when enacting KCC 10.25.

But the Club and the NRA provide no authority for the proposition that the County was required to enter specific findings in order to invoke the preemption exception in RCW 9.41.300(2)(a). The general rule is that an ordinance need not be supported by specific findings: "There is no constitutional rule which requires that [county commissioners] conduct a special investigation or make formal findings before they exercise their police power." *Petstel Inc. v. County of King,* 77 Wn.2d 144, 151, 459 P.2d 937 (1969). Instead, " 'if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith.' " *State v. McCuistion*, 174 Wn.2d 369, 392, 275 P.3d 1092 (2012) (quoting *Lenci v. City of Seattle*, 63 Wn.2d 664, 668, 388 P.2d 926 (1964)).

Under this rule, it is conceivable that when KCC 10.25 was enacted, facts existed demonstrating that shooting ranges jeopardize humans and property. Therefore, we must presume that such facts existed and that the County enacted KCC 10.25 in conformity with those facts.

14

We also cannot ignore that evidence supporting the application of RCW 9.41.300(2)(a) was provided in *Kitsap Rifle*, the previous litigation between the County and the Club. On appeal, this court noted the findings the trial court in *Kitsap Rifle* entered regarding safety issues:

> The trial court made unchallenged findings that (1) the Club's property was a "blue sky" range, with no overhead baffles to stop accidentally or negligently discharged bullets . . . ; (2) more likely than not, bullets have escaped and will escape the Club's shooting areas and *possibly will strike persons or property in the future*, based on the firearms used at the range, vulnerabilities of neighboring residential properties, allegations of bullet impacts in nearby residential developments, evidence of bullets lodged in trees above berms, and the opinions of testifying experts; and (3) the Club's range facilities, including safety protocols, were inadequate to prevent bullets from leaving the property.

*Kitsap Rifle*, 184 Wn. App. at 283 (internal citation omitted) (emphasis added). The trial court here referenced these findings in ruling that the RCW 9.41.300(2)(a) exception applied.

The Club argues on multiple grounds that we cannot rely on the findings in *Kitsap Rifle*. However, the trial court's findings in *Kitsap Rifle* certainly would have informed the County about the potential dangers to people and property caused by shooting ranges in general. And the well-established law discussed above allows us to presume that a local government considered available facts supporting an ordinance. *See McCuistion*, 174 Wn.2d at 392.

c. Scope of Exception

The Club argues that even if the preemption exception in RCW 9.41.300(2)(a) applies to KCC 10.25, that exception allowed the County to regulate only the discharge of firearms and not other aspects of the shooting facility operations. We disagree.

RCW 9.41.290 preempts all local ordinances relating to the discharge of firearms. To the extent that KCC 10.25 regulates the discharge of firearms, RCW 9.41.300(2)(b) provides an exception for those regulations. However, to the extent that regulations regarding the operation

of shooting ranges do not affect the discharge of firearms, preemption under RCW 9.41.290 does not apply at all to those regulations and no exception is needed to avoid preemption. Therefore, the scope of the exemption in RCW 9.41.300(2)(a) does not affect the scope of those regulations.[5]

### d.    Summary

The operation of the Club's shooting facility presented "a reasonable likelihood that human, domestic animals, or property will be jeopardized" as required under RCW 9.41.300(2)(a). Therefore, to the extent that RCW 9.41.290 otherwise would preempt KCC 10.25, we hold that the preemption exception stated in RCW 9.41.300(2)(a) applies.

## D.    CONSTITUTIONAL RIGHT TO BEAR ARMS

The Club[6] argues that KCC 10.25 impermissibly infringes upon the right to bear arms as guaranteed by both the Second Amendment to the United States Constitution and article I, section 24 of the Washington Constitution. We disagree.

### 1.    Legal Principles

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The

---

[5] The Club also argues that many of the regulations in KCC 10.25 are preempted under RCW 9.41.290 because they "exceed[ ] the requirements of state law." But the Club does not explain why the various provisions of KCC 10.25 exceed the requirements of state law. In fact, there is no state law regulating the operation of shooting ranges.

[6] The NRA's amicus brief does not address the right to bear arms issue.

Second Amendment right to bear arms applies to Washington through the due process clause of the Fourteenth Amendment. *State v. Sieyes*, 168 Wn.2d 276, 296, 225 P.3d 995 (2010).

Article I, section 24 of the Washington Constitution states, "The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men." The wording of article I, section 24 "indicates the right is secured not because arms are valued per se, but only to ensure self-defense or defense of state. This suggests the constitutional right should be viewed in such a light." *Montana*, 129 Wn.2d at 594.

Although the right to bear arms is protected by both the United States and Washington Constitutions, the rights are not identical and our Supreme Court has determined that the state right should be interpreted separately from its federal counterpart. *State v. Jorgenson*, 179 Wn.2d 145, 155, 312 P.3d 960 (2013).

We review constitutional issues de novo. *Id.* at 150. We presume a legislative enactment is constitutional, and if possible, we will construe an enactment so as to render it constitutional. *Id.* The party challenging an enactment has the burden of showing that it is unconstitutional. *City of Seattle v. Evans*, 184 Wn.2d 856, 861-62, 366 P.3d 906 (2015), *cert. denied,* 137 S. Ct. 474 (2016).

2. Second Amendment Analysis[7]

The United States Supreme Court in *District of Columbia v. Heller* announced that the Second Amendment protected an individual's right to keep and bear arms. 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). The Court stated that a core purpose of the Second Amendment is self-defense, particularly the defense of the home. *Id.* at 630, 635. However, the Court also emphasized that the Second Amendment right is not unlimited. *Id.* at 595, 626.

Based on *Heller*, a majority of federal circuits, including the Ninth Circuit, have adopted a two-step inquiry for analyzing Second Amendment challenges. *Silvester v. Harris*, 843 F.3d 816, 820-21 (9th Cir. 2016). "[F]irst, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *Id.* We adopt this approach.[8]

a. Implication of Constitutional Right

The threshold question under the Second Amendment analysis is whether KCC 10.25's licensing requirement for shooting facilities burdens the right to bear arms. In general, this question involves a historical analysis of the Second Amendment right – whether the challenged law falls outside the historical scope of the right. *Jackson v. City & County of San Francisco*,

---

[7] Where feasible, we resolve constitutional questions first under the Washington Constitution before addressing the United States Constitution. *Jorgenson*, 179 Wn.2d at 152. However, the Club focuses primarily on the Second Amendment and relies heavily on a Second Amendment case. Therefore, we address the Second Amendment first.

[8] In *Jorgenson*, our Supreme Court did not address this two-part approach, and instead focused only on the appropriate level of scrutiny. 179 Wn.2d at 158-161. However, in that case the challenged statute prohibited firearms possession by a person charged with but not yet convicted of a serious offense. *Id.* at 148. Because that statute clearly implicated a Second Amendment right of firearm possession, the court did not need to address the first step.

746 F.3d 953, 960 (9th Cir. 2014), *cert*. *denied*, 135 S. Ct. 2799 (2015).  When state or local laws are challenged, the scope of the right to bear arms depends on how the right was understood when the Fourteenth Amendment was ratified.  *McDonald v. City of Chicago*, 561 U.S. 742, 746-47, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010).

The Club does not undertake such a historical analysis regarding the regulation of shooting facilities.  Instead, the Club relies on *Ezell v. City of Chicago*, in which the court held that a complete ban on all shooting ranges within the city of Chicago implicated the Second Amendment.  651 F.3d 684, 704-06 (7th Cir. 2011).  The court stated, "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Id.* at 704.

However, *Ezell* involved a complete ban on shooting ranges.  *Id.* at 690.  Therefore, the court did not address whether requiring shooting facilities to obtain an operating license would implicate the Second Amendment.  And the court distinguished historical statutes that were mere regulatory measures and regulations limiting the time, place and manner of shooting forearms, suggesting that those statutes did not implicate the Second Amendment.  *Id.* at 705-06.

The County presents no significant argument on this issue.[9]  Instead, the County skips to the second step in the analysis and argues that KCC 10.25 survives the intermediate level of

---

[9] The County does cite to an unpublished district court opinion in which the court disagreed with *Ezell* and stated that it was "not convinced that the Second Amendment extends to the right to operate a gun range." *Sundowner Ass'n v. Wood County Comm'n*, 2014 WL 3962495, at \*9-10 (S.D. W. Va. Aug. 13, 2014).

scrutiny (discussed below). Because the County does not fully address this issue, we assume without deciding that KCC 10.25 implicates the Second Amendment.

        b.    Appropriate Level of Scrutiny

The second question involves determining the appropriate level of scrutiny for KCC 10.25. The court in *Heller* made clear that rational basis review was not acceptable for a Second Amendment analysis. 554 U.S. at 628 n.27.

The Ninth Circuit has outlined a sliding scale approach:

> In ascertaining the proper level of scrutiny, the court must consider: (1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right. The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny. That is what was involved in *Heller*. A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny. Otherwise, intermediate scrutiny is appropriate.

*Silvester*, 843 F.3d at 821 (citations omitted). Therefore, "if a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right," the court may apply intermediate scrutiny. *Jackson*, 746 F.3d at 961; *see also Jorgenson*, 179 Wn.2d at 160 (stating that the appropriate level of scrutiny depends, "at least in part, on the type of law challenged and the type of limit imposed on the right to bear arms").

As noted above, a core right under the Second Amendment is to use firearms for self-defense, and particularly the defense of the home. *Jackson*, 746 F.3d at 961 (citing *Heller*, 545 U.S. at 630, 635). Regarding the extent of the burden, laws that regulate only the manner that a person may use a firearm are less burdensome than laws prohibiting firearm possession completely. *Jackson*, 746 F.3d at 961. "Similarly, firearm regulations which leave open

alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Id.*

Under this approach, the Ninth Circuit and a majority of the other circuits have consistently applied "intermediate scrutiny" to firearms regulations. *Silvester*, 843 F.3d at 822-23 (discussing decisions in other circuits). Our Supreme Court in *Jorgenson* also applied intermediate scrutiny under the Second Amendment to a statute prohibiting persons charged with a serious offense from possessing a firearm while the case was pending. 179 Wn. 2d at 161-62. In a Second Amendment case, "[a] law survives intermediate scrutiny if it is substantially related to an important government purpose." *Id.* at 162.

Here, KCC 10.25 does not place a substantial burden on Second Amendment rights. The ordinance does not prohibit the discharge of firearms, and only affects the manner in which any entity like the Club can operate a shooting range. In addition, KCC 10.25 leaves open opportunities for people to acquire and maintain proficiency with firearms – at the Club if it obtains an operating license, or at some other licensed shooting facility. Therefore, we apply intermediate scrutiny to KCC 10.25.

c.    Intermediate Scrutiny Analysis

The County has an important government interest in public safety – ensuring that shooting facilities do not endanger people or property. The stated purpose of KCC 10.25 was to "promote the safety of the general public by establishing a permitting procedure and rules for the development and operation of shooting range facilities." KCC 10.25.060. In addition, the adopted shooting range standards were "intended to protect and safeguard participants, spectators, neighboring properties and the public, while promoting the continued availability of

shooting ranges for firearm education, practice in the safe use of firearms, and recreational firearm sports." KCC 10.25.060.

And KCC 10.25 substantially relates to this interest. The operating license requirement is designed to ensure that shooting facilities meet certain standards. *See* KCC 10.25.090(1). All the required standards in KCC 10.25.090(4) directly involve safety issues except subsection (h), which involves noise.

We hold that KCC 10.25 satisfies intermediate scrutiny. Accordingly, we hold that KCC 10.25 does not violate the Second Amendment.

3.    Article I, Section 24 Analysis

Firearm rights under the article I, section 24 Washington Constitution "are subject to reasonable regulation pursuant to the State's police power." *Jorgenson*, 179 Wn.2d at 155. A firearm regulation is reasonable if it is " 'reasonably necessary to protect public safety or welfare, and substantially related to legitimate ends sought.' " *Id.* at 156 (quoting *Montana*, 129 Wn.2d at 594). Courts balance " 'the public benefit from the regulation against the degree to which it frustrates the purpose of the constitutional provision.' " *Jorgenson*, 179 Wn.2d at 156 (quoting *Montana*, 129 Wn.2d at 594). We first consider the regulation's public benefit and then determine whether the regulation "unduly frustrates" the purpose of article I, section 24. *Jorgenson*, 179 Wn.2d at 157.

Here, the public benefit of KCC 10.25 is to promote public safety and to protect and safeguard people and property. KCC 10.25.060. KCC 10.25 does not unduly frustrate the right of any individual to bear arms in self-defense because the ordinance does not prohibit the discharge of firearms and only regulates the manner in which shooting facilities operate. In

22

addition, KCC 10.25 allows people to acquire and maintain proficiency with firearms at licensed shooting facilities.

We hold that KCC 10.25 is a reasonable regulation that does not violate article I, section 24.

CONCLUSION

We affirm the trial court's summary judgment order and its ruling that KCC 10.25 is enforceable against the Club.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished portion of the opinion, we address the Club's arguments that (1) KCC 10.25 improperly interferes with the Club's right to operate the shooting facility as a valid nonconforming use, (2) KCC 10.25 is inconsistent with the restrictions in the deed the Club received from the County when the Club obtained ownership of the shooting facility property, and (3) KCC 10.25 is unconstitutionally vague. We reject these arguments.

SUMMARY JUDGMENT RULING

In its order granting summary judgment in favor of the County, the trial court ruled that the County's deed conveying the shooting facility property to the Club did not create a genuine issue of material fact. In a footnote, the court summarily rejected the Club's other arguments, including that KCC 10.25 was inconsistent with the Club's nonconforming use rights and was unconstitutionally vague.

ANALYSIS

A.  INTERFERENCE WITH NONCONFORMING USE RIGHTS

The Club argues that KCC 10.25 is inapplicable to the Club's shooting facility because the ordinance interferes with the Club's legal nonconforming use status.[10]  We disagree.

The concept of nonconforming use generally relates to zoning regulations, not other types of regulations.

> A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated.

*Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998).  The right to continue a valid nonconforming use "refers *only* to the right not to have the use *immediately terminated* in the face of a zoning ordinance which prohibits the use."  *Id.*

In *Rhod-A-Zalea*, the Supreme Court expressly rejected the argument that a nonconforming use is not subject to any regulations enacted after existence of the use, even health and safety regulations adopted pursuant to a local government's police power.  *Id.* at 8-9.  The court quoted a zoning treatise for the basic rule:

> Nonconforming uses generally are held to be subject to later police power regulations imposed by statute or local ordinances regulating the manner or operation of use.  These regulatory restrictions often take the form of licensing or special permit requirements.

*Id.* at 9 (quoting 4 ARDEN H. RATHKOPF & DAREN A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 51A.02[1] (1996)).  After an analysis of cases in other jurisdictions, the court

---

[10] The parties agree that the Club's shooting range constitutes a valid nonconforming use of the Club's property even if existing ordinances would prohibit a shooting facility in the current location.  *See Kitsap Rifle*, 184 Wn. App. at 263.

concluded that "nonconforming uses, although protected from zoning ordinances which immediately terminate their use, are subject to later-enacted regulations enacted for the health, safety and welfare of the community." *Rhod-A-Zalea*, 136 Wn.2d at 12.

Here, KCC 10.25 regulates the manner and operation of the Club's shooting facility to "promote the safety of the general public" and to "protect and safeguard participants, spectators, neighboring properties and the public." KCC 10.25.060. As a result, KCC 10.25 represents a police power regulation that under *Rhod-A-Zalea* applies to the Club's nonconforming use.

The Club claims that that *Rhod-A-Zalea* does not apply because this case involves a fundamental constitutional right (presumably the right to bear arms), that the County was required to prove real or likely harm from the Club's operation in order to enact these regulations, and that KCC 10.25 in actuality is a land use regulation, not a safety measure. But the Club provides no citation to authority or any particularly coherent argument supporting its argument.[11]

We hold that the Club's nonconforming use status does not preclude the enforceability of KCC 10.25.[12]

---

[11] The only case the Club cites, *Weden v. San Juan County*, 135 Wn.2d 678, 689, 958 P.2d 273 (1998), does not support its position.

[12] In a different section of its brief, the Club states that "The County's attempt to require an operating permit for the firing range that has been in use for over 90 years is an impermissible denial of due process rights associated with grandfathered uses," and cites a North Carolina case. Br. of Appellant at 17-18. But the Club does not explain the nature of the due process right or provide any further argument. Therefore, we decline to address this argument. *See Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that we need not consider arguments not supported by meaningful analysis).

B. COVENANTS IN DEED OF SALE

The Club argues that KCC 10.25 is inapplicable to the Club's shooting facility because of covenants in its deed from the County. We disagree.

Before 2009, the Club leased the property on which its facility is located from the Washington Department of Natural Resources (DNR). In 2009, DNR transferred that property to the County, which in turn transferred the property to the Club. The preamble to the ordinance approving the transaction stated that "the County finds that it is in the public interest for firearm safety . . . to provide that [the Club] continue to operate with full control over the property on which it is located." CP at 194.

The County also executed a deed for the property in favor of the Club that subjected the Club to certain restrictive covenants. The deed stated that the Club "shall confine its active shooting range facilities on the property consistent with its historical use of approximately eight (8) acres of active shooting ranges with the balance of the property serving as safety and noise buffer zones." CP at 197. In addition, the deed required the Club to conform to the rules and regulations of the Firearms Range Account and conform to the Firearms and Archery Range Program, both established by the legislature. Finally, the Club agreed to "operate the shooting range at all times in a safe and prudent manner and conform its activities to accepted industry standards and practices." CP at 198.

The Club argues that the deed covenants created an "equitable servitude" running in favor of the Club that locked in the existing development conditions on the property. The Club apparently argues that the deed exempts the Club from imposing any regulations on the shooting facility's operations beyond what the deed covenants require.

26

However, the Club provides no authority for the proposition that becoming bound by restrictive covenants in a deed that governs its operation established a vested right to be subject to *only* those covenants and not any future regulations. And the Club does not even provide a plausible explanation for its theory. We reject the Club's equitable servitude argument.

C.     VAGUENESS CHALLENGE

The Club argues that certain provisions of KCC 10.25 are unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment.[13] We disagree.

The Fourteenth Amendment "requires statutes to provide fair notice of the conduct they proscribe." *State v. Watson*, 160 Wn.2d 1, 6, 154 P.3d 909 (2007). A statute is void for vagueness if " '(1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed; or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement.' " *Id.* (quoting *State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001) (internal quotations omitted).

We will find a statute unconstitutionally vague only in exceptional cases. *Watson*, 160 Wn.2d at 11. There is a presumption that a statute is constitutional, and a person challenging the statute must prove beyond a reasonable doubt that the statute is unconstitutionally vague. *Id.*

Here, the Club claims that certain provisions of KCC 10.25 give the County unbridled discretion, lack specific standards, and are ambiguous. Specifically, the Club argues that (1) KCC 10.25.090(4)(c), which provides that designs and safety standards shall be evaluated by an

---

[13] In a section heading and first sentence of the section, the Club states that KCC 10.25 also violates article I, section 3 of the Washington Constitution. However, the Club does not mention this provision again and presents no argument that article I, section 3 provides a different standard than the Fourteenth Amendment. Therefore, we decline to address the applicability of article I, section 3. *See Cowiche Canyon*, 118 Wn.2d at 809.

expert, does not set forth any evaluation criteria; (2) in KCC 10.25.090(4)(i), which requires a means for participants and spectators to readily contact emergency services, the term "readily contact" is undefined and ambiguous; (3) in KCC 10.25.090(4)(j), which requires the direction of fire to be not toward any structure housing people or domestic animals, is unreasonable because people and animals could positions themselves in the direction of fire at any time; and (4) that the statement in KCC 10.25.090(1) that the licensing requirement is not intended to alter the nonconforming use statues of existing ranges is ambiguous.

However, the Club does not explain why these provisions are so vague as to require invalidation of KCC 10.25. Given the Club's high burden, we hold that the Club has not established that any provisions of KCC 10.25 are unconstitutionally vague.

## CONCLUSION

We affirm the trial court's summary judgment order and its ruling that KCC 10.25 is enforceable against the Club.

_____
MAXA, J.

We concur:

_____
WORSWICK, J.

_____
BJORGEN, C.J.

28