IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ISAAC GORDON, an individual, and all those similarly situated, | ) ) ) | No. 38623-6-III |
| Appellant, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| ROBINHOOD FINANCIAL, LLC, a Delaware limited liability company, and subsidiary of ROBINHOOD MARKETS, INC., a Delaware corporation, | ) ) ) ) ) ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, C.J. — Isaac Gordon commenced a class action lawsuit against Robinhood Financial, LLC, asserting that the company's refer-a-friend text messaging practices for acquiring new customers violated Washington's Consumer Protection Act (CPA), chapter 19.86 RCW, and Washington's Commercial Electronic Mail Act (CEMA), chapter 19.190 RCW.

Through discovery, it became apparent that Gordon had received the offending text message from the brother of one of his attorneys, that Gordon and two of his attorneys had manufactured his claim, that they had done this in other class action

lawsuits, and that they had made false and misleading statements in pleadings designed to hide this.

Once caught, Gordon and his attorneys surreptitiously dismissed the lawsuit without prejudice. On reconsideration of the dismissal order, the trial court dismissed the lawsuit with prejudice and assessed attorney fee sanctions against Gordon and his attorneys for almost $750,000. The legal bases for these sanctions were RCW 4.84.250 (the minor claims statute), RCW 4.84.185 (the frivolous claim statute), and CR 11.

On appeal, Gordon and his attorneys argue the trial court erred when it imposed sanctions. We conclude that a class action lawsuit is not a minor claim for purposes of RCW 4.84.250—even if the putative class representative's claim is small, and that Gordon's claim was not frivolous within the meaning of RCW 4.84.185. We, however, conclude that the trial court did not abuse its discretion when it found that Gordon's and his attorneys' misconduct warranted CR 11 sanctions. We remand for the trial court to reconsider what amount of CR 11 sanctions actually are necessary to deter Gordon and his attorneys from engaging in claim manufacturing in the future.

FACTS

Robinhood Financial, LLC, is an investment brokerage that allows its customers to invest commission-free in stocks, exchange-traded funds, options, and cryptocurrency utilizing Robinhood's website and mobile applications (Apps). This case concerns a

"refer-a-friend" marketing program operated by Robinhood, through which Robinhood's customers can refer another person to join Robinhood. As part of the referral program, if a customer refers a person and that person signs up for Robinhood, then Robinhood will give the customer and the person one share of free stock each.

Robinhood provides customers with two methods for sending referral messages. The first method allows customers to copy a link from Robinhood's website or Apps and share it via text message, e-mail, or other social media or messaging application. The second method allows customers to send messages by sharing their contacts from their mobile device's address book. Robinhood does not itself send any of the referral program messages, and Robinhood customers have ultimate control over the message's contents.

In July 2019, Isaac Gordon, a Washington resident, received a text message from Robinhood's referral program. The text message contained a hyperlink to Robinhood's website and stated, "Your free stock is waiting for you! Join Robinhood and we'll both get a stock like Apple, Ford, or Facebook for free. Sign up with my link." Clerk's Papers (CP) at 8-9.

*Superior court proceedings*

In October 2019, Gordon filed a class action complaint against Robinhood Financial, LLC, in Spokane County Superior Court. He alleged he received an

3

unsolicited commercial electronic text message from Robinhood's referral program that enabled its existing users to transmit unsolicited text messages to targeted recipients like himself. He also alleged he did not consent, affirmatively or otherwise, to receive the text message from Robinhood or its existing users. He further alleged the text message violated the CPA, chapter 19.86 RCW, through Washington's CEMA, chapter 19.190 RCW. Gordon sought to represent a class of similarly situated individuals who also received referral text messages from Robinhood. His complaint alleged that he and other putative class members were each entitled to recover $500 under the CEMA, $1,000 in exemplary damages, and attorney fees and costs for each CEMA violation.

*Removal to federal court*

In November 2019, Robinhood removed the case to the United States District Court for the Eastern District of Washington under the "Class Action Fairness Act of 2005" (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005). In doing so, Robinhood alleged that the aggregated amount of damages, fees, and costs Gordon sought "surpass CAFA's $5,000,000 amount-in-controversy requirement." CP at 23.

*Robinhood offers to settle*

In September 2020, Robinhood made a settlement offer to Gordon for $1,501. The letter stated that, pursuant to RCW 4.84.250 and .270, Gordon's maximum recovery possible on his claim as pleaded was $1,500. The letter further stated that if he failed to

4

accept the settlement offer, he would be liable for Robinhood's attorney fees, which exceeded $100,000 at that time. Robinhood did not receive a response to this settlement offer.

*Class certification*

In November 2020, Gordon filed a motion for class certification. Robinhood opposed the motion. Relying on Gordon's allegations, the federal court certified the class and appointed Gordon as the class representative. The court appointed Kirk D. Miller as class counsel, and Brian G. Cameron and Shayne J. Sutherland as co-class counsel. Soon after, the court granted Gordon's motion for E. Michelle Drake and Sophia Rios to appear as pro hac vice counsel and later appointed E. Michelle Drake as co-class counsel.

Discovery proceeded and, in April 2021, Gordon responded to Robinhood's first set of discovery requests. In response to two interrogatories, Gordon stated he received two unsolicited Robinhood referral text messages. As for the first, he described the sender as "unknown" with whom he had no relationship, and he was "uncertain" if he provided the sender with his telephone number. CP at 2133. As for the second, he described being "uncertain" whether he had a relationship with the sender or knew the sender's name. CP at 2134. Gordon also produced screenshots of the text messages:

5



CP at 2233, 2235. The screenshots showed only the referral text message and no other messages between Gordon and the senders before or after the referral text message. In response to another of Robinhood's interrogatories, Gordon disclosed that he was a plaintiff in three other class action lawsuits.

*Robinhood's motion to stay*

In May 2021, Robinhood filed a motion to stay the case so that it could conduct additional discovery into "facts that strongly suggest that class counsel orchestrated sending to Plaintiff Isaac Gordon the very text messages that form the basis for Gordon's claim in this lawsuit." CP at 2078. Robinhood explained it had learned that the first text message was sent from a telephone number belonging to Nathan Budke, a friend and classmate of Ewan Cameron, the son of Brian Cameron, one of Gordon's attorneys. Robinhood discovered that the second text message was sent from a telephone number belonging to John Cameron, Brian Cameron's brother. Robinhood also learned that Brian Cameron represented Gordon in two of the class actions Gordon identified:

*Gordon v. MOD Super Fast Pizza, LLC*[1] and *Gordon v. Healthy Halo Insurance Services, Inc.*[2] Both of those cases were premised on CEMA violations involving referral text messages, and their complaints were nearly identical to Gordon's complaint against Robinhood. In light of this information, Robinhood explained that it may seek to disqualify Brian Cameron as counsel, remove Gordon as class representative, decertify the class due to fraud and misrepresentation, and seek sanctions under Rule 11.

Soon after Robinhood's motion to stay, Gordon served amended interrogatory answers on Robinhood in which he admitted, contrary to his prior answers, that he had been friends with John Cameron for years and had smoked cigars, played fantasy role play and card games, and attended a concert with him. Gordon admitted to providing his telephone number to John Cameron. Gordon also produced additional screenshots of text message conversations that he had with John Cameron immediately before and after the second Robinhood referral text message. The screenshots showed light-hearted banter between the two men, making it clear they knew each other well. Gordon continued to deny that he knew the identity of the sender of the other text message.

In response to Robinhood's motion to stay, Gordon agreed that the case should be stayed, but opposed allowing Robinhood to conduct additional discovery. Instead,

---

[1] Spokane County Superior Court Case No. 20-200148-32.
[2] Eastern District of Washington Case No. 2:19-cv-00387.

Gordon requested that the court stay all discovery in order for him to file motions for his class counsel to withdraw and to substitute a new class representative. In a supportive declaration, Brian Cameron, Gordon's counsel, stated that he is John Cameron's brother and Ewan Cameron's father. He revealed that his son worked as an assistant at both his and Kirk Miller's law firms. He also confirmed that he, John Cameron, Ewan Cameron, Gordon, and other family and friends met on several occasions for game nights. He denied instructing his brother to send Gordon the text message at issue in this case and stated, "To the best of my knowledge" Gordon never consented to receive the referral text message. CP at 2311.

The federal court granted Robinhood's motion to stay and allowed Robinhood to conduct discovery into its allegation that Gordon and class counsel Brian Cameron orchestrated the referral text message at issue. In its order, the court explained: "[T]he new allegations raise ethical concerns and the Court will not allow a bait-and-switch tactic that enables a lawsuit to survive where [Gordon] knew or should have known that he was an inadequate class representative in the first place." CP at 2304.

In June 2021, attorneys Drake and Rios filed a motion for leave to withdraw as Gordon's counsel. In the motion, Drake explained that she and Rios were under the impression that Gordon's initial discovery responses were complete and accurate, and that they would not have become involved in the case had they known the truth. On the

same day as Drake and Rios moved to withdraw as class counsel, Gordon moved to withdraw as the class representative. Robinhood opposed both motions.

*Robinhood's motion to decertify the class and disqualify class counsel*

In late June 2021, Robinhood moved to decertify the class and disqualify class counsel. In its motion and supportive declarations, Robinhood alleged that Brian Cameron, Shayne Sutherland, and Kirk Miller have a history of manufacturing claims. Robinhood explained that the same attorneys represented Gordon as plaintiff in *Gordon v. MOD Super Fast Pizza, LLC*, and that MOD's attorneys also uncovered evidence suggesting John Cameron sent Gordon the referral text message at issue. Gordon voluntarily dismissed his claims in that case when MOD brought this connection to Brian Cameron's attention. Robinhood also said it learned that Gordon's attorneys "routinely encourage their friends to make small purchases at cannabis stores, provide their phone numbers for store loyalty programs, and then commence CEMA lawsuits when they receive a text from the store." CP at 3221. Robinhood identified 10 of these CEMA class actions, filed by Gordon's attorneys, including three where Nathan Budke is the named plaintiff.

In response to Robinhood's motion, Gordon agreed to withdraw as class representative and agreed there were sufficient grounds to decertify the class. However, Gordon continued to deny he consented to receive the text message sent by

9

John Cameron. Moreover, he argued, even if he was found to have colluded with some other party to receive the text message at issue, that would not be a defense to a CEMA violation. In his supportive declaration, Gordon declared he did not arrange or agree with Brian Cameron, John Cameron, or anyone else to receive the Robinhood referral text message. He also denied consenting to receive the text message in the MOD Pizza case.

Similarly, in his supportive declaration, Kirk Miller denied manufacturing the lawsuit and denied having knowledge about the identity or involvement of his co-counsel's brother, John Cameron. He characterized Robinhood's allegations as nothing more than a distraction. He declared it was his legal opinion that if a Robinhood referral text message that violates CEMA is sent by a friend or family member, it would not change the viability of a claim against Robinhood.

> *The federal court dismisses Gordon as class representative and remands his individual claim to superior court*

On July 27, 2021, the federal court entered an order (1) dismissing Gordon as class representative, (2) decertifying the class, and (3) allowing Michelle Drake and Sophia Rios to withdraw as Gordon's counsel. The federal court declined to disqualify the remaining class counsel on the current record.

In its order, the federal court sua sponte raised and considered whether it had subject matter jurisdiction in light of its rulings. The court explained:

10

> The basis for this Court's jurisdiction was that this class action concerned an amount in controversy exceeding $5,000,000 thereby invoking 28 U.S.C. § 1332(d). . . . This matter is no longer a class action and the amount at issue does not exceed $5,000,000. Even if the Court were to invoke the basic diversity of citizenship statute as to Plaintiff's single allegation of a violation of CEMA, subject matter jurisdiction fails because Plaintiff Isaac Gordon's damages do not exceed $75,000. *See* 28 U.S.C. § 1332(a).
>
> Accordingly, this matter must be remanded back to the State Court.

CP at 4210.

Robinhood moved the federal court for partial reconsideration of its decision, arguing that decertification does not divest a federal court of CAFA jurisdiction and requesting the court vacate the remand order. The federal court denied Robinhood's motion. In its order denying Robinhood's motion for partial reconsideration, the court explained that post-filing developments usually do not defeat CAFA jurisdiction, but that there are exceptions to that rule "'such as . . . when there was no jurisdiction to begin with because the jurisdictional allegations were frivolous from the start.'" CP at 4251 (quoting *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1092 n.3 (9th Cir. 2010).

*Superior court proceedings on remand*

On July 30, 2021, the same day the federal court denied Robinhood's motion for partial reconsideration, Robinhood filed a motion to stay in the superior court.

11

Robinhood argued, absent a stay, Gordon would likely seek to voluntarily dismiss his case to avoid judgment on the merits.

On August 4, 2021, Gordon filed an ex parte motion in the superior court seeking voluntary dismissal without prejudice under CR 41(a). His motion did not mention Robinhood's pending motion to stay. The superior court granted Gordon's motion.

In September 2021, Robinhood moved for relief from the superior court's order dismissing Gordon's case without prejudice, citing irregularity in the proceedings and the misconduct of Gordon's counsel. Robinhood requested that the court dismiss the case with prejudice because dismissal without prejudice was pointless, and it would be an appropriate sanction for Gordon's misconduct. Robinhood argued that Gordon "surreptitiously obtained" voluntary dismissal by ex parte motion without providing notice, then served the motion on Robinhood by mail to delay notice, despite having an e-mail service agreement that Gordon requested. Rep. of Proc. (Oct. 8, 2021) at 7.

In October 2021, following oral argument, the superior court agreed with Robinhood, vacated its earlier order, and dismissed the case with prejudice.

Gordon filed a motion for reconsideration, arguing that he had an absolute right to voluntarily dismiss his claims. The superior court denied Gordon's motion for reconsideration by written order. The superior court pointed to facts it perceived as irregularities in how Gordon obtained voluntary dismissal that warranted relief

under CR 60. The court explained that Gordon had an absolute right to dismiss at any time before resting, but that there is no right to a dismissal without prejudice. The court noted that it would not have signed Gordon's ex parte order had it known about Robinhood's pending motion to stay.

*Robinhood's motion for attorney fees*

Following dismissal with prejudice, Robinhood moved the superior court for an award of attorney fees for defending against Gordon's claim. Robinhood requested fees under (1) RCW 4.84.250, which permits recovery of attorney fees in an action for damages where the amount pleaded is $10,000 or less, (2) RCW 4.84.185, which permits recovery of attorney fees for actions that are frivolous, and (3) CR 11, which permits courts to deter frivolous filings by awarding monetary sanctions. Gordon opposed the motion.

After a hearing, the superior court issued a letter decision and then later entered an order that contained extensive findings and conclusions to support its award of reasonable attorney fees in favor of Robinhood and against Gordon and attorney Brian Cameron, his firm, and attorney Kirk Miller, and his firm, jointly and severally, on each of the three bases requested. With respect to RCW 4.84.250, the court determined that Gordon's pleaded claim for damages was for $10,000 or less. With respect to RCW 4.84.185, the court determined that the case was frivolous and advanced without reasonable cause,

13

partly because the federal court's determination that the case was frivolous from the start was the law of the case. With respect to CR 11, it found that (1) the federal court's finding of frivolousness was the law of the case, (2) Gordon and his counsel signed various pleadings and discovery documents that were false and misleading, (3) Gordon's counsel failed to conduct a reasonable inquiry into the facts, and (4) the sanctions were necessary to deter Gordon and his counsel from fabricating future claims. Robinhood requested $1,248,862.62 in attorney fees and filed nearly 500 pages of billing records to support its fee request. Gordon and his counsel opposed the fee request.

In February 2023, the superior court awarded Robinhood $749,393 in attorney fees. In its written order, the superior court noted that it reviewed the voluminous submissions supporting and opposing the fee award, considered the parties' arguments, removed billing entries for duplicative or unsuccessful efforts, and discounted the total award by 33 percent to reflect reasonable Spokane attorney rates. In March 2023, the superior court entered judgment consistent with its attorney fee award against Gordon and his counsel, which they timely appealed.

## ANALYSIS

### A. DISMISSAL WITH PREJUDICE

Gordon first contends the trial court erred when it dismissed his complaint with prejudice. We disagree.

No. 38623-6-III
*Gordon v. Robinhood Fin.*

*Standard of review*

We review a trial court's order on a motion to dismiss under CR 41 for manifest abuse of discretion, which occurs when the ruling is manifestly unreasonable or discretion was exercised on untenable grounds. *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190, 69 P.3d 895 (2003).

Here, the trial court initially dismissed the case without prejudice on Gordon's motion for voluntary dismissal under CR 41(a)(1)(B), but after Robinhood's motion for relief, it vacated the order and dismissed the case with prejudice. In doing so, it determined that dismissal with prejudice was warranted because (1) dismissal without prejudice would be pointless, given Gordon's frivolous claim, and (2) dismissal with prejudice was warranted as a sanction due to Gordon's frivolous claim and his attorney's litigation misconduct. We first set forth the relevant legal principles and then separately review whether the trial court abused its discretion.

*Voluntary dismissals under CR 41*

CR 41(a) pertains to voluntary dismissals. CR 41(a)(1)(B) mandates a trial court to grant a plaintiff's voluntary motion to dismiss an action if the motion is made prior to the close of the plaintiff's opening case. CR 41(a)(4) explains when the dismissal is with prejudice or without prejudice. CR 41(a)(4) provides:

> Unless otherwise stated in the order of dismissal, the dismissal is without prejudice, except that an order of dismissal operates as an adjudication upon the merits when obtained by a plaintiff who has once dismissed an action based on or including the same claim in any court of the United States or of any state.

CR 41(a)(4) therefore provides the trial court with the discretion to make the dismissal with prejudice in an appropriate case. *See Escude*, 117 Wn. App. at 192.

"Our Supreme Court has held that a trial court has the discretion to grant a nonsuit with or without prejudice, especially as a part of the court's inherent power to impose a sanction of dismissal in a proper case." *Id*. at 191 (citing *In re Detention of G.V.*, 124 Wn.2d 288, 297-98, 877 P.2d 680 (1994)). A trial court also has discretion under CR 41(a)(4) to order dismissal with prejudice where dismissal without prejudice would be pointless. *Gutierrez v. Icicle Seafoods, Inc.*, 198 Wn. App. 549, 557, 394 P.3d 413 (2017) (quoting *Escude*, 117 Wn. App. at 187). Thus, here, once the superior court vacated its prior dismissal order,[3] it had the discretion to enter dismissal with prejudice as

---

[3] Gordon did not assign error to the trial court's decision to vacate its initial order of dismissal. His only argument that might be construed as challenging the trial court's decision to vacate its initial order of dismissal is in a footnote where he argues that Robinhood completely "ignored any procedure required by CR 60." Br. of Appellant at 13 n.6. His argument is insufficient, however, because this court does not address errors raised only in footnotes, which are "at best, ambiguous or equivocal as to whether the issue is truly intended to be part of the appeal." *State v. Johnson*, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993).

part of the court's inherent power as a sanction and where dismissal without prejudice would be pointless. We now review whether the trial court abused its discretion.

Gordon argues the trial court erred when it dismissed the action with prejudice as a sanction without first addressing the *Burnet/Rivers* factors. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997); *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 686, 41 P.3d 1175 (2002). As a threshold issue, Robinhood notes that Gordon did not raise the *Burnet/Rivers* factors as an issue in the trial court.[4] We generally decline to review claims of error not raised in the trial court. RAP 2.5. We exercise our discretion nevertheless and review Gordon's argument.

In Washington, when a trial court imposes dismissal in a proceeding as a sanction for violation of a discovery order, it must be apparent from the record that (1) the party's refusal to obey the discovery order was willful or deliberate, (2) the party's actions substantially prejudiced the opponent's ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would probably have sufficed. *Rivers*, 145 Wn.2d at 686 (citing *Burnet*, 131 Wn.2d at 494).

---

[4] Gordon counters that he did raise these factors by attaching a law review article as an exhibit to Brian Cameron's declaration in opposition to Robinhood's motion for attorney fees. The law review article is 24 pages long and generally focuses on the imposition and calculation of attorney fees as sanctions. Gordon did not discuss the *Burnet/Rivers* factors in his trial court briefing or argument. For this reason, we are not persuaded that he raised this issue in the trial court.

The trial court is required to consider the *Burnet/Rivers* factors when it imposes dismissal in a proceeding as a sanction "for violation of a discovery order." *Id.* Both *Rivers* and *Burnet* dealt with sanctions under CR 37 for discovery order violations. *Id.*; *Burnet*, 131 Wn.2d at 494-95. That is not what occurred here. Rather, the trial court here sanctioned Gordon by dismissing his case with prejudice as part of its inherent power under CR 41(a)(4) for Gordon's frivolous claim and litigation misconduct.

Gordon does not meaningfully challenge the trial court's finding that dismissal as a sanction was warranted because of litigation misconduct, which it detailed in its written findings. The trial court meticulously identified the instances of Gordon and his counsel being untruthful or deceptive in the complaint, amended complaint, discovery responses, and declarations. Gordon did not assign error to any of these findings. We conclude the trial court did not abuse its discretion when it dismissed Gordon's claim with prejudice as a sanction.

B.      THE SUPERIOR COURT'S ATTORNEY FEE AWARD

Gordon next argues the trial court erred in awarding attorney fees to Robinhood under (1) RCW 4.84.250, (2) RCW 4.84.185, and (3) CR 11. We address each argument separately.

18

> 1. *RCW 4.84.250: the minor claims statute is inapplicable to class action lawsuits*

RCW 4.84.250 provides that a trial court shall award attorney fees to the prevailing party, in "any action for damages where the amount pleaded" is $10,000 or less, if the statutory requirements are satisfied. *Target Nat'l Bank v. Higgins*, 180 Wn. App. 165, 173, 321 P.3d 1215 (2014). The defendant is the prevailing party if the plaintiff recovers nothing, or if the recovery, exclusive of costs, is the same or less than the amount the defendant offered to settle. RCW 4.84.270.

Gordon argues that RCW 4.84.250 does not apply here because the amount pleaded in his complaint was substantial, as reflected in Robinhood's motion to remove the lawsuit to federal court. In its motion, Robinhood advised the federal court that the damages Gordon sought exceeded $5,000,000, CAFA's jurisdictional requirement. Robinhood counters that we should look at Gordon's individual claim, notwithstanding that both Gordon's and the putative class's claims were pending at the time Robinhood made its settlement offer. We view the issue as whether RCW 4.84.250 applies to lawsuits seeking class action certification of small claims.

We review questions of statutory interpretation de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Gray v. Suttell & Assocs.*,

181 Wn.2d 329, 339, 334 P.3d 14 (2014).  To determine legislative intent, we look at the plain language of the statute, consider the text of the provision, the context of the statute, any related statutory provisions, and the statutory scheme as a whole.  *Id.*  If the plain meaning of the statute is unambiguous, we apply that meaning.  *Ronald Wastewater Dist. v. Olympic View Water & Sewer Dist.*, 196 Wn.2d 353, 364, 474 P.3d 547 (2020).  If the plain language of the statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous.  *Jametsky*, 179 Wn.2d at 762.  We resolve ambiguity by considering outside sources that may indicate legislative intent, including principles of statutory construction, legislative history, and relevant case law.  *Id*.  Our paramount concern is to ensure that the statute is interpreted consistently with the underlying policy of the statute.  *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392, 687 P.2d 195 (1984).

We note that the statutory scheme repeatedly refers to the prevailing party, the plaintiff, and the defendant, all in singular terms.  Yet in many lawsuits, there is more than one plaintiff and more than one defendant.  Nothing in the statutory scheme answers the question of whether the "$10,000 or less" requirement applies individually or in the aggregate.  We conclude the statute is susceptible to more than one reasonable interpretation, and so we must discern legislative intent from analyzing the purposes of the statute.

"The purpose of RCW 4.84.250 is to encourage out-of-court settlements and to penalize parties who unjustifiably bring or resist small claims." *Beckmann v. Spokane Transit Auth.*, 107 Wn.2d 785, 788, 733 P.2d 960 (1987). Another purpose is to "'enable a party to pursue a meritorious small claim without seeing [their] award diminished in whole or in part by legal fees.'" *Id.* (quoting *Northside Auto Serv., Inc. v. Consumers United Ins. Co.*, 25 Wn. App. 486, 492, 607 P.2d 890 (1980)).

Here, Gordon was a nominal party, seeking to be the putative class representative in an action for over $5 million. Because the action was not a small claim, the first purpose of the rule would not be furthered by its application. Also, attorneys in class action lawsuits recover their fees on a contingent basis from the class. Because Gordon could pursue his small claim without it being further diminished beyond the agreed contingent fee arrangement, the second purpose of the rule would not be furthered by its application here.

Moreover, application of RCW 4.84.250 to class action lawsuits could interfere with maintaining such lawsuits. "A 'primary function of the class action is to provide a procedure for vindicating claims [that], taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group.'" *Chavez v. Our Lady of Lourdes Hosp.*, 190 Wn.2d 507, 514, 415 P.3d 224 (2018) (alteration in original) (quoting *Brown v. Brown*, 6 Wn. App. 249, 253, 492 P.2d

21

581 (1971)).  Here, Robinhood sought to pressure Gordon, the putative class representative, to settle his claim for $1,501 or potentially be responsible for more than $100,000 of Robinhood's attorney fees.  Settlement of the putative class representative's claim would have cost Robinhood only $1,501, but it would have forced plaintiffs' counsel to find a new putative class representative, who might then have received a similar settlement offer.  Interpreting RCW 4.84.250 as applying to class action lawsuits could and likely would interfere with the orderly administration of such actions.  Partly because class action lawsuits are complex cases where millions of dollars are often at stake, we believe the legislature did not intend for RCW 4.84.250 to apply to such lawsuits.

We conclude that RCW 4.84.250 does not apply to class action lawsuits, and express no opinion whether small claims should otherwise be viewed singularly or in the aggregate when determining if they fall within RCW 4.84.250.

### 2. *RCW 4.84.185: Gordon's claim is not frivolous*

Gordon argues the trial court erred by determining that his lawsuit was frivolous under RCW 4.84.185.  We agree.

Under RCW 4.84.185, a prevailing party in a civil action is entitled to seek fees for defending a frivolous action.  The statute authorizes a court to award reasonable attorney fees when, after considering the evidence presented, it determines that "the

position of the nonprevailing party was frivolous and advanced without reasonable cause." RCW 4.84.185. "'A frivolous action is one that cannot be supported by any rational argument on the law or facts.'" *Hanna v. Margitan*, 193 Wn. App. 596, 612, 373 P.3d 300 (2016) (quoting *Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 340, 798 P.2d 1155 (1990)).

Gordon argues that even if he engaged in claim manufacturing, his CEMA claim is not frivolous because it can be supported by a rational legal and factual argument.

As noted earlier, CEMA prohibits businesses from sending or assisting in the transmission of commercial text messages to Washington residents:

> No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service . . . .

RCW 19.190.060(1). But a business does not violate CEMA if it initiates or assists in the transmission of a text message to a person who has "clearly and affirmatively consented in advance to receive these text messages." RCW 19.190.070(1)(b).

The trial court found that Gordon, John Cameron, attorney Brian Cameron, and attorney Kirk Miller orchestrated the referral text message so as to initiate this and other class action lawsuits. Gordon consented to receiving the Robinhood text from John Cameron, his friend, and attorneys Brian Cameron and Kirk Miller knew this.

23

Nevertheless, one can reasonably argue that the consent that renders refer-a-friend type of text messages legal is the recipient giving consent *to the business* that initiated or assisted in transmitting the message. Here, there is no evidence that Gordon "clearly and affirmatively" gave consent *to Robinhood* to receive the text message. Because Gordon's claim can be supported by a rational argument of the facts and law, it is not frivolous. We conclude the trial court erred in holding otherwise.[5]

### 3. CR 11 sanctions were warranted

Gordon raises various arguments why the trial court erred in assessing CR 11 sanctions. Having concluded that Gordon's case was not frivolous, we distill Gordon's remaining arguments to (1) whether Robinhood provided adequate notice it would seek CR 11 sanctions, (2) whether Gordon and his attorneys engaged in conduct warranting CR 11 sanctions, and if so, (3) what are the appropriate limitations of those sanctions in this case.

### a. Robinhood provided adequate notice

Gordon argues Robinhood failed to provide notice it would seek CR 11 sanctions. We disagree.

---

[5] The parties dispute whether the trial court erred in applying the law-of-the-case doctrine to the federal court's determination that Gordon's case was frivolous from the start. Regardless, the doctrine does not limit our review of a trial court's application of the law. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 56, 366 P.3d 1246 (2015).

Under Washington's CR 11, attorneys and judges who perceive a possible violation of CR 11 must bring it to the offending party's attention as soon as possible. *Biggs v. Vail*, 124 Wn.2d 193, 198, 876 P.2d 448 (1994). Without timely notice, CR 11 sanctions are unwarranted. *Id.* The purpose of this requirement is to give the offending party an opportunity to mitigate the sanction by amending or withdrawing the baseless filing. *Id.* Another reason is to deter the offending party from submitting additional baseless filings. *Id.*

Here, the trial court found that Gordon received proper notice under CR 11 when Robinhood, just days after discovering Gordon's relationship with John Cameron, stated in a court filing that it was considering a "Rule 11" motion for sanctions. CP at 4554. Gordon did not assign error to this finding. Moreover, it is supported by substantial evidence. Robinhood put Gordon on notice that it may have grounds to bring a Rule 11 motion for sanctions in its motion to stay, which Robinhood filed soon after it discovered who sent Gordon the referral text messages.

Gordon argues Robinhood did not comply with the safe harbor provision in the Fed. R. of Civ. P. 11. However, the trial court did not impose sanctions under the federal rule. Rather, the trial court imposed sanctions under Washington's CR 11. Accordingly, Robinhood was not required to comply with the Fed. R. of Civ. P. 11 safe harbor provision.

Gordon argues he took mitigating steps following Robinhood's motion to stay by attempting to withdraw as class representative. However, as Robinhood points out, the federal court denied Gordon's attempt to withdraw, characterizing his actions as a "bait-and-switch tactic that enables a lawsuit to survive where [Gordon] knew or should have known that he was an inadequate class representative in the first place." CP at 2304.

> b.      *Gordon and his attorneys engaged in sanctionable conduct*

CR 11 allows a trial court to impose upon parties and counsel sanctions for certifying pleadings, motions, and legal memoranda that (1) are not well grounded in fact, (2) are not warranted by existing law or a good faith argument for a change in existing law, (3) are interposed for an improper purpose, or (4) contain denials of factual contentions that are not warranted on the evidence or reasonably based on a lack of information and belief. CR 11(a)(1)-(4), (b)(1)-(4). The purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992).

A trial court's ruling on a motion for CR 11 sanctions is reviewed for an abuse of discretion. *Watness v. City of Seattle*, 11 Wn. App. 2d 722, 735, 457 P.3d 1177 (2019). "The trial court abuses its discretion where its conclusion was the result of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons."

*Id.* at 736. We can affirm a trial court's sanctions award on any basis supported by the evidence. *Id.*

Here, aside from imposing CR 11 sanctions based on its reversed determination of frivolousness, the trial court imposed CR 11 sanctions because Gordon and his counsel made repeated false statements with respect to their lack of knowledge of who sent the offending text messages to Gordon. These false statements occurred in the original complaint, the amended complaint, the motion for class certification, the original discovery responses, one of Gordon's declarations, and a declaration from Gordon's counsel after the allegations of claim manufacturing were made. Gordon's counsel hid the relationship between Gordon and the Cameron brothers to prevent Robinhood from learning that the class action claim was manufactured.

The trial court explained:

CR 11 sanctions are necessary to deter Plaintiff and his counsel from fabricating claims in the future. In addition to Plaintiff's counsel's misconduct in this case and in *Gordon v. Mod Pizza*, discussed above, Plaintiff's counsel Brian Cameron, Kirk Miller, and their law firms have initiated several other CEMA-based putative class actions, where plaintiffs claim to have received unsolicited commercial electronic text messages that appear similarly suspect. Several of these cases were on behalf of plaintiffs alleging that they received loyalty program text messages after visiting multiple cannabis stores on the same day. . . . The plaintiff in one of these cases testified at his deposition that Brian Cameron drove him from one store to the next. . . . After the misconduct of Brian Cameron and Kirk Miller came to light in these cases, Brian Cameron and/or Kirk Miller declined to file the previously served complaints . . . or voluntarily

dismissed the cases without prejudice . . . .  This is the same tactic that
Plaintiff and his counsel employed in this case.

CP at 4556-57.

Our rules of professional conduct prohibit a lawyer from knowingly making a

false statement of fact to a tribunal.  RPC 3.3(a)(1).  Filing a document in violation of the

rules is a filing for an improper purpose for which CR 11 sanctions may be imposed.

*Watness*, 11 Wn. App. 2d at 740.  Here, attorneys Brian Cameron and Kirk Miller

repeatedly made knowingly false statements in pleadings, including when they alleged in

the original complaint that Gordon did not consent, affirmatively or otherwise, to receive

the text message from Robinhood *or its existing users*.  As noted earlier, although Gordon

did not give Robinhood consent, he did give John Cameron, Robinhood's existing user,

consent to send him the text.

      *c.*      *In this context, CR 11 sanctions should be limited to the amount
necessary to deter the misconduct*

As noted previously, the purpose of CR 11 sanctions is to deter baseless filings

and to curb abuses of the judicial system.  *Bryant*, 119 Wn.2d at 219.  The trial court

found that Gordon's and his counsel's misconduct began at the inception of the case,

continued throughout it, and that "substantial sanctions" were necessary to deter Gordon

and his counsel from fabricating claims in the future.  CP at 4558.  These findings are

supported by the record. Nevertheless, the trial court awarded all of Robinhood's reasonable attorney fees, nearly $750,000, as sanctions.

Had we found Gordon's claim to be frivolous, we might have allowed this amount to stand. But because the trial court's CR 11 sanctions were partly tied to its reversed frivolous determination, we remand for the trial court to determine what amount of sanctions actually are necessary to deter Gordon's and his legal counsels' claim manufacturing practices. *See Biggs*, 124 Wn.2d at 197-98 (noting that one purpose of CR 11 sanctions is to deter baseless filings). In making its determination, the trial court should consider the financial resources of the sanctioned individuals and firms. Although we do not disturb the trial court's finding that "substantial sanctions" are necessary, "substantial" is a relative term. Small ships do not need large rudders to turn around.

Reversed in part and remanded for determination of CR 11 sanctions.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.                                    Pennell, J.